UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Brian Keith Umphress,** | |
| Plaintiff, | |
| v. | |
| **David C. Hall**, in his official capacity as Chair of the State Commission on Judicial Conduct; **Ronald E. Bunch**, in his official capacity as Vice-Chair of the State Commission on Judicial Conduct; **David M. Patronella**, **Darrick L. McGill**, **Sujeeth B. Draksharam**, **Ruben G. Reyes**, **Valerie Ertz**, **Frederick C. Tate**, **Steve Fischer**, **Janis Holt**, **M. Patrick Maguire**, and **David Schenck**, each in their official capacities as Members of the State Commission on Judicial Conduct, | Case No. 4:20-cv-00253-P |
| Defendants. | |

## FIRST AMENDED COMPLAINT

A few months ago, the Texas State Commission on Judicial Conduct issued a "public warning" to Dianne Hensley, a justice of the peace who recuses herself from officiating at same-sex marriage ceremonies on account of her Christian faith. *See* Exhibit 1. The Commission ruled that Judge Hensley had violated Canon 4A(1) of the Texas Code of Judicial Conduct, which states: "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." *Id*. The premise of the Commission's disciplinary action is that a judge who expresses disapproval of same-sex marriage or homosexual conduct has violated Canon 4A(1)—and has cast "reasonable doubt" on his capacity

to act impartially toward homosexual litigants who appear in his court. The Commission's interpretation of Canon 4A(1) threatens every judge in Texas who refuses to perform same-sex marriages, as well as those who publicly evince disapproval of same-sex marriage or homosexual conduct in their extra-judicial activities.

Brian Keith Umphress serves as a county judge in Jack County, Texas. Judge Umphress applies the law faithfully and impartially to every litigant who comes before him, regardless of their sexual behavior or sexual orientation. Judge Umphress also acknowledges and respects the Supreme Court's authority to decide cases and controversies under Article III of the Constitution, and he faithfully applies *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), when deciding cases or controversies that may eventually fall within the appellate jurisdiction of the Supreme Court.

Judge Umphress, however, is engaged in numerous extra-judicial activities that evince disapproval of homosexual behavior, same-sex marriage, and the Supreme Court's ruling in *Obergefell*, and all of these activities are exposing him to discipline under the Commission's current interpretation of Canon 4A(1). Judge Umphress, for example, is member and supporter of Christian Missions Church in Jacksboro, a Bible-believing church that adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture. By publicly belonging to and supporting this church, Judge Umphress is—like Judge Hensley—conducting his "extra-judicial activities" in a manner that evinces disapproval of same-sex marriage and homosexual conduct, which violates the Commission's interpretation of Canon 4A(1).

Judge Umphress also refuses to officiate at same-sex weddings, even though he continues to officiate at opposite-sex marriage ceremonies. Judge Umphress has taken this stance not only on account of his Christian faith, but also because same-sex marriage remains illegal under the laws of Texas, which continue to define marriage as the union of one man and one woman. *See* Tex. Const. art. I, § 32; Tex. Family Code

§ 6.204(b). The State of Texas has not amended or repealed its marriage laws in response to *Obergefell*, and the Supreme Court has no power to formally amend or revoke a state statute or constitutional provision—even after opining that the state law violates the Supreme Court's interpretation of the Constitution. *See Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("[N]either the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* 'struck down' any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it"). The federal judicial power extends only to the resolution of cases and controversies, and while Judge Umphress acknowledges that he must subordinate state law to *Obergefell* when deciding cases or controversies, he will continue to follow and obey the Texas marriage laws when deciding whether to officiate at a wedding ceremony.

Finally, Judge Umphress will be seeking re-election in 2022, and he intends to campaign for office as an opponent of same-sex marriage and the living-constitution mindset that produced *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

The Commission's current interpretation of Canon 4A(1), however, subjects Judge Umphress and every judge in Texas to discipline if they express views critical of same-sex marriage or homosexual conduct, on the ground that this somehow calls into question their "impartiality" toward homosexual litigants who appear in their courtroom. The Commission's interpretation of Canon 4A(1) violates the constitutional rights of judges, and Judge Umphress seeks declaratory and injunctive relief to that effect.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.    Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3.    Venue is also proper because at least four of the defendants—Ruben G. Reyes, Valerie Ertz, Frederick C. Tate, and David Schenck—are "domiciled" within this judicial district within the meaning of 28 U.S.C. § 1391(c)(1), as their personal residences are located in the Northern District of Texas and they intend to continue living there, and they therefore "reside" within this district under 28 U.S.C. § 1391(b)(1).

4.    The federal Declaratory Judgment Act (28 U.S.C. § 2201), 42 U.S.C. § 1983, and *Ex parte Young*, 209 U.S. 123 (1908), supply the causes of action for the relief that Judge Umphress is seeking in this litigation.

## PARTIES

5.    Plaintiff Brian Keith Umphress resides in Jack County.

6.    Defendant David C. Hall is chair of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Chairman Hall is sued in his official capacity.

7.    Defendant Ronald E. Bunch is vice-chair of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Vice-Chairman Bunch is sued in his official capacity.

8.    Defendant David M. Patronella is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Patronella is sued in his official capacity.

9.    Defendant Darrick L. McGill is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner McGill is sued in his official capacity.

10.  Defendant Sujeeth B. Draksharam is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Draksharam is sued in his official capacity.

11.  Defendant Ruben G. Reyes is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Reyes is sued in his official capacity.

12.  Defendant Valerie Ertz is a member of the State Commission on Judicial Conduct. She may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Ertz is sued in her official capacity.

13.  Defendant Frederick C. Tate is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Tate is sued in his official capacity.

14.  Defendant Steve Fischer is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Fischer is sued in his official capacity.

15.  Defendant Janis Holt is a member of the State Commission on Judicial Conduct. She may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Holt is sued in her official capacity.

16.  Defendant M. Patrick Maguire is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Maguire is sued in his official capacity.

17.  Defendant David Schenck is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Schenck is sued in his official capacity.

## FACTS

18.  Plaintiff Brian Keith Umphress serves as a county judge in Jack County, Texas. He has held this office since January 1, 2019.

19.  As a county judge, Judge Umphress is authorized by Texas law to officiate at weddings. *See* Tex. Family Code § 2.202(a).

20.  The Constitution and laws of Texas continue to define marriage as the union of one man and one woman. *See* Tex. Const. art. I, § 32 ("(a) Marriage in this state shall consist only of the union of one man and one woman. (b) This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage."); Tex. Family Code § 6.204(b) ("A marriage between persons of the same sex or a civil union is contrary to the public policy of this state and is void in this state."). Texas has not amended its Constitution or its marriage laws in response to the Supreme Court's opinion in *Obergefell*.

21.  The law of Texas prohibits wedding officiants "from discriminating on the basis of race, religion, or national origin against an applicant who is otherwise competent to be married." Tex. Family Code § 2.205(a). Judge Umphress obeys section 2.205(a) and has never discriminated—and will not discrminate—against any person or couple seeking to be married on any of these grounds. Section 2.205(a) of the Texas Family Code does not, however, prohibit a licensed wedding officiant from discriminating on the basis of sex or sexual orientation when deciding whether to perform a marriage ceremony.

22.  On November 12, 2019, the State Commission on Judicial Conduct sanctioned Dianne Hensley, a justice of the peace in McLennan County, because she recuses herself from officiating at same-sex marriage ceremonies on account of her Christian faith. *See* Exhibit 1. If a same-sex couple requests a justice-of-the-peace wedding from Judge Hensley, Judge Hensley or her staff politely and respectfully explain that Judge Hensley is unable to officiate at same-sex weddings on account of her

Christian faith, and they provide referrals to other wedding officiants in McLennan County who are willing to perform their ceremonies.

23.  The Commission found that Judge Hensley's recusal-and-referral system violated Canon 4A(1) of the Texas Code of Judicial Conduct, which states: "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." The Commission declared that Judge Hensley:

> should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(l) of the Texas Code of Judicial Conduct.

*See* Exhibit 1.

24.  The premise of the Commission's decision is that judicial speech or conduct that evinces disapproval of same-sex marriage or homosexual conduct will violate Canon 4A(1), by "casting doubt" on the judge's "capacity to act impartially to persons" on account of their sexual orientation—even when that speech or conduct is motivated by sincere religious belief.

## FACTS RELATED TO STANDING

25.  The Commission's actions against Judge Hensley and its interpretation of Canon 4A(1) threaten Judge Umphress and every judge in Texas with discipline if they refuse to perform same-sex weddings, or if they conduct their any of their extra-judicial activities in a manner that evinces disapproval of same-sex marriage or homosexual behavior.

26.  Judge Umphress is engaged in numerous extra-judicial activities that evince disapproval of homosexual behavior, same-sex marriage, and the Supreme Court's ruling in *Obergefell*. Each of these activities is exposing him to discipline from the State Commission on Judicial Conduct.

27.  Judge Umphress is a member and supporter of Christian Missions Church in Jacksboro, a Bible-believing church that adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture. By publicly belonging to and supporting this church, Judge Umphress is—like Judge Hensley—conducting his "extra-judicial activities" in a manner that evinces disapproval of same-sex marriage and homosexual conduct, which violates the Commission's interpretation of Canon 4A(1).

28.  Judge Umphress also refuses to officiate at same-sex weddings, even though he continues to officiate at opposite-sex marriage ceremonies. Judge Umphress has taken this stance not only on account of his Christian faith, but also because same-sex marriage remains illegal under the laws of Texas, which continue to define marriage as the union of one man and one woman. *See* Tex. Const. art. I, § 32; Tex. Family Code § 6.204(b). The State of Texas has not amended or repealed its marriage laws in response to *Obergefell*, and the Supreme Court has no power to formally amend or revoke a state statute or constitutional provision—even after opining that the state law violates the Supreme Court's interpretation of the Constitution. *See Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("[N]either the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* 'struck down' any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it"); *Texas v. United States*, 945 F.3d 355, 396 (5th Cir. 2019) ("The federal courts have no authority to erase a duly enacted law from the statute books, [but can only] decline to enforce a statute in a particular case or controversy." (citation and internal quotation marks omitted)). The federal judicial power extends *only* to the resolution of cases and controversies, and while Judge Umphress acknowl-

edges that he must subordinate state law to *Obergefell* when deciding cases or contro-
versies, he will continue to follow and obey the Texas marriage laws when deciding
whether to officiate at a wedding ceremony.

29.  Finally, Judge Umphress will be seeking re-election in 2022, and he intends
to campaign for office as an opponent of same-sex marriage and the living-constitu-
tion mindset that produced *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

30.  Judge Umphress is suffering injury in fact because he must risk disciplinary
action if he persists in his refusal to officiate at same-sex marriage ceremonies. *See*
*Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Judge Umphress is also risking disci-
plinary action by joining and supporting a church that opposes same-sex marriage and
homosexual conduct, and he will risk disciplinary action if he announces his opposi-
tion to *Obergefell* and same-sex marriage when he seeks reelection in 2022.

31.  Each of these injuries is traceable to the Commissioners' decision to disci-
pline Judge Hensley for refusing to officiate at same-sex marriage ceremonies, and to
interpret Canon 4A(1) in a manner that prohibits judges from evincing disapproval
of same-sex marriage or homosexual conduct in their extra-judicial activities, all of
which imposes a chilling effect on judges who exercise their constitutionally protected
rights to speak and worship.

32.  Each of these injuries will be remedied by the declaratory and injunctive relief
that Judge Umphress is seeking in this lawsuit.

### Claim 1: Nothing In *Obergefell* Or In The U.S. Constitution Requires Judge Umphress To Officiate At Same-Sex Marriage Ceremonies, Even If He Chooses To Officiate At Opposite-Sex Weddings

33.  It is not clear whether the Commission on Judicial Conduct believes that
*Obergefell* or the Fourteenth Amendment *required* Judge Hensley to officiate at same-
sex marriage ceremonies once she decided to continue officiating at opposite-sex wed-
dings.

34.  Nevertheless, Judge Umphress must first obtain a declaratory judgment that nothing in *Obergefell*—and nothing in the U.S. Constitution—requires him to officiate at same-sex marriage ceremonies before he can seek declaratory and injunctive relief on his First Amendment claims.

35.  Judge Umphress acknowledges that he must respect and follow *Obergefell*'s interpretation of the Fourteenth Amendment when deciding cases or controversies. Article III of the Constitution empowers the Supreme Court to decide "cases" and "controversies," and Judge Umphress believes that state courts and inferior federal courts should follow the Supreme Court's interpretations of the Constitution when deciding "cases" or "controversies" even if they disagree with the Supreme Court's pronouncements. *See, e.g., State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

36.  But when Judge Umphress officiates at wedding ceremonies, he is not resolving cases or controversies, and he has no obligation to subordinate the State's marriage laws to a judicial opinion about what the Constitution means. *Obergefell* no more requires Judge Umphress to perform same-sex weddings than it requires members of the clergy do so. *See* Tex. Family Code § 2.202(a) (authorizing both clergy and judges to conduct marriage ceremonies).

37.  The Court should therefore enter a declaratory judgment that nothing in *Obergefell* or the U.S. Constitution requires state-licensed officiants—either clergy or judges—to perform same-sex marriage ceremonies, even if the officiant chooses to perform opposite-sex weddings.

### Claim 2: The First Amendment Protects Judge Umphress's Right Not To Officiate At Same-Sex Marriage Ceremonies, Even If He Chooses To Officiate At Opposite-Sex Weddings

38.  Judges have First Amendment rights to free speech and expressive conduct, and judicial "impartiality" canons may not be interpreted or applied in a manner that

violates a judge's First Amendment freedoms. *See Republican Party of Minnesota v. White*, 536 U.S. 765 (2002).

39.  Judge Umphress acknowledges that the State of Texas may have a compelling interest in ensuring the impartiality of the state judiciary, as well as preserving the judiciary's appearance of impartiality—at least to the extent that "impartiality" refers to a lack of bias for or against a particular party to a court proceeding. *See Republican Party of Minnesota*, 536 U.S. at 775. Judge Umphress acknowledges that the First Amendment may therefore permit the State of Texas to discipline judges for speech or expressive conduct that would be protected by the First Amendment if made by a private citizen.

40.  The First Amendment would, in Judge Umphress's view, allow a state to discipline a judge who publicly promises to rule a certain way on a particular case before reading the briefs and listening to argument. *See Republican Party of Minnesota*, 536 U.S. at 770 (reserving judgment on this question).

41.  The First Amendment would also, in Judge Umphress's view, allow a state to discipline a judge who utters racist epithets or belongs to a racially discriminatory country club, because speech and behavior of that sort may indicate that the judge is hostile to racial minorities and will apply the law differently when minority litigants appear in his courtroom.

42.  But no such inference can be drawn when a judge expresses disapproval of same-sex marriage or homosexual behavior. Disapproval of an individual's sexual *behavior* does not evince bias toward that individual as a *person* when they appear in court. Every judge in the state of Texas disapproves of at least some forms of sexual behavior. Most judges disapprove of adultery, a substantial number (though probably not a majority) disapprove of pre-marital sex, and nearly every judge disapproves of polygamy, prostitution, pederasty, and pedophilia. A judge who holds these beliefs—either on religious or non-religious grounds—has not compromised his impartiality

toward litigants who engage in those behaviors. It is absurd to equate a judge's dis-approval of an individual's behavior as undermining the judge's impartiality toward litigants who engage in that conduct. Otherwise no judge who opposes murder or rape could be regarded as impartial when an accused murderer or rapist appears in his court.

43.  Indeed, if opposition to same-sex marriage or homosexual *behavior* is to be equated with bias against homosexual *litigants*, then no judge could ever belong to a church that opposes same-sex marriage or teaches that homosexual conduct is im-moral. *See In re Complaint of Judicial Misconduct (Paine)*, 664 F.3d 332, 335 (U.S. Judicial Conference 2011) (finding that a federal judge engaged in judicial miscon-duct by remaining a member of a country club that discriminated against blacks).

44.  The Court should therefore declare that the First Amendment protects Judge Umphress's right to conduct his extra-judicial activities in a manner that evinces disapproval of same-sex marriage and homosexual conduct. These First Amendment rights include, but are not limited to: (a) Judge Umphress's right to join, support, and worship at a church that teaches that marriage can exist only between one man and one woman and that homosexual conduct is immoral and contrary to the Bible; (b) Judge Umphress's right to express his disagreement with same-sex marriage and *Ober-gefell* by officiating only at weddings between one man and one woman; (c) Judge Umphress's right to announce his opposition to same-sex marriage and *Obergefell* when seeking reelection in 2022. *See Republican Party of Minnesota v. White*, 536 U.S. 765, 768 (2002).

45.  The Court should also issue a permanent injunction that bars the defendants from investigating or disciplining judges for conducting their extra-judicial activities in a manner that evinces disapproval of same-sex marriage and homosexual conduct. Specifically, the Court should permanently enjoin the defendants from investigating or disciplining a judge for: (a) joining, supporting, or worshipping at a church that

teaches that marriage can exist only between one man and one woman and that ho-mosexual conduct is immoral or contrary to the Bible; (b) choosing to officiate only at weddings between one man and woman; and (c) announcing one's opposition to same-sex marriage and *Obergefell* when seeking election or reelection to judicial office.

### Claim 3: Canon 4A(1), As Interpreted By The State Commission On Judicial Conduct, Is Unconstitutionally Vague

46.  Canon 4A(1), as currently interpreted by the State Commission on Judicial Conduct, is unconstitutionally vague because the Commission's interpretation of the word "impartiality" both "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and "authorizes or even en-courages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

47.  The Commission has created this vagueness problem by equating disapproval of a person's sexual behavior with bias against that individual as a litigant when they appear in court.

48.  By punishing Judge Hensley for refusing to officiate at same-sex marriages, the Commission has announced that judges may be subject to professional discipline if they conduct their extra-judicial activities in a manner that evinces disapproval of same-sex marriage and homosexual conduct.

49.  But no judge can know how far the Commission intends to take this princi-ple. There are countless judges in Texas who publicly demonstrate that they—like Judge Hensley—hold religious beliefs against same-sex marriage and homosexual conduct by belonging to churches that condemn homosexual behavior, including the Roman Catholic Church, the Southern Baptist Convention, the United Methodist Church, and the Church of Jesus Christ Latter-Day Saints. Does the Commission intend to discipline *these* judges for "casting doubt on their capacity to act impartially to persons appearing before them"? One can only guess. Surely the Commission

would discipline a judge who belongs to a racist church that excludes blacks. *See In re Complaint of Judicial Misconduct (Paine)*, 664 F.3d 332, 335 (U.S. Judicial Conference 2011) (finding that a federal judge engaged in judicial misconduct by remaining a member of a country club that discriminated against blacks, despite the judge's repeated efforts to persuade the club to change its racially discriminatory practices). But if disapproval of homosexual conduct is to be equated with bias against homosexual litigants, as the Commission apparently believes, then it is not apparent how membership in a church that opposes homosexual behavior can be allowed under the Commission's interpretation of Canon 4A(1).

50.  And if the Commission believes that it *is* permissible for judges to express their disapproval of same-sex marriage and homosexual conduct by belonging to a church that condemns these behaviors, then it is not apparent why Judge Hensley should have been disciplined for refusing to officiate at same-sex weddings, nor is it apparent how Judge Hensley's behavior undermined her "impartiality" any more than the behavior of judges who publicly belong to Bible-believing churches that oppose same-sex marriage and homosexual conduct.

51.  The Commission's actions against Judge Hensley also call into question whether judges may make charitable contributions to the Salvation Army or other Christian organizations that oppose same-sex marriage. The City of San Antonio recently banned Chick-fil-A from its airport because it was giving money to Christian organizations that oppose same-sex marriage, including the Salvation Army and the Fellowship of Christian Athletes. *See* Acacia Coronado, *San Antonio Sued for Excluding Chick-fil-A From Airport*, Texas Tribune (Sept. 9, 2019), available at https://bit.ly/32leYX5 (last visited on June 1, 2020). Judges who financially support these organizations—or any other Christian organization opposed to same-sex marriage—must wonder if they will be the next ones disciplined for violating the "impartiality" canon.

52.  All of this opens the door to arbitrary and discriminatory enforcement, which fails to provide notice of the conduct that is and is not prohibited under the Commission's current interpretation of "impartiality." Once the Commission begins equating disapproval of a person's sexual behavior with bias against litigants, the impartiality canon becomes hopelessly vague and indeterminate.

53.  The Commission's current interpretation of Canon 4A(1) also calls into question whether judges may express criticism or disapproval of other sexual behaviors, such as adultery, pre-marital sex, polygamy, prostitution, pederasty, or pedophilia. To our knowledge, the Commission has never disciplined a judge for expressing disapproval of any of those sexual behaviors. So the Commission must explain why a judge who expresses disapproval of homosexual conduct should be treated differently from a judge who expresses disapproval of other controversial sexual behaviors. Expressing disapproval homosexual behavior may not be as fashionable as it once was. But if the Commission is singling out this speech or conduct because it no longer accords with politically correct opinion, then that is the very definition of arbitrary and discriminatory enforcement.

54.  The Court should therefore enter a declaratory judgment that Canon 4A(1), as currently interpreted by the Commission, is unconstitutionally vague.

55.  The Court should also enjoin the Commissioners from enforcing Canon 4A(1) until they announce a clarifying interpretation that explains when conduct that evinces disapproval of a person's sexual behavior violates the canon's impartiality requirement.

## Claim 4: The Commissioners Are Violating The Free Exercise Clause By Threatening Judges Who Recuse Themselves From Officiating At Same-Sex Marriage Cermonies On Account Of Their Religious Faith

56.  The Commissioners' actions against Judge Hensley—and their threatened actions against other judges who refuse to perform same-sex weddings—violate the

Free Exercise Clause as applied to judges who object to same-sex marriage for sincere religious reasons.

57.  Although *Employment Division v. Smith*, 494 U.S. 872 (1990), holds that free-exercise claims must yield to the requirements of neutral, generally applicable laws, the Texas Family Code prohibits wedding officiants from discriminating *only* on the basis "of race, religion, or national origin." Tex. Family Code § 2.205(a); *see also id*. ("A person authorized to conduct a marriage ceremony by this subchapter is pro-hibited from discriminating on the basis of race, religion, or national origin against an applicant who is otherwise competent to be married."). The statute conspicuously omits any prohibition on discrimination on account of sex or sexual orientation. So Judge Umphress is not violating a neutral, generally applicable law by declining to officiate at same-sex marriage ceremonies. Indeed, his actions are in complete accord with the Texas statutes that regulate wedding officiants.

58.  In addition, the "impartiality" requirement of Canon 4A(1), as currently in-terpreted by the Commission, is too vague to qualify as a neutral law of general ap-plicability under *Smith*, and its interpretation and enforcement by the Commission is too haphazard and arbitrary to qualify as a "neutral" requirement of "general applica-bility."

59.  The *Smith* rule is also inapplicable because Judge Umphress is asserting his Free Exercise claim in conjunction with his rights under the Speech Clause. *See Smith*, 494 U.S. at 881 (recognizing that the strict-scrutiny standard of *Sherbert v. Verner*, 374 U.S. 398 (1963), continues to apply when a Free Exercise claim is asserted "in conjunction with other constitutional protections," even when the free-exercise claim is brought against a neutral law of general applicability); *Telescope Media Group v. Lucero*, 936 F.3d 740, 759 (8th Cir. 2019) (holding that *Smith* is inapplicable to "hybrid situations" in which a free-exercise claim is asserted "in conjunction with

other constitutional protections, such as freedom of speech"); *see also* paragraphs 38–45, *supra*.

60.   The Commission must therefore satisfy the demanding standard of *Sherbert v. Verner*, 374 U.S. 398 (1963), by showing that its efforts to punish judges who decline to officiate at same-sex weddings advance a "compelling state interest" and are the least restrictive means of doing so. *See id.* at 406–09.

61.   The State of Texas has no "compelling" interest in forcing unwilling judges or justices of the peace to officiate at same-sex marriage ceremonies. The State of Texas has not even enacted a law that requires wedding officiants to perform same-sex weddings if they choose to officiate at opposite-sex weddings—even though its statutes forbid judges to discriminate on account of race, religion, and national origin when choosing whether to officiate at a wedding. *See* Tex. Family Code § 2.205(a).

62.   Even if Texas had enacted a hypothetical statute that forbids judges to recuse themselves from officiating at same-sex weddings, this statutory requirement would not advance a "compelling" state interest in preserving the impartiality (or the perceived impartiality) of the state judiciary. A judge does not compromise his impartiality toward homosexual litigants by speaking or acting in a manner that evinces disapproval of same-sex marriage or homosexual conduct. Disapproval of an individual's sexual behavior does not evince bias toward that individual when they appear as a litigant in court. *See* paragraphs 42–43, *supra*.

63.   The Court should therefore enter a declaratory judgment that the Free Exercise Clause prohibits the Commissioners from investigating or disciplining a judge who refuses to officiate at same-sex marriages for reasons rooted in sincere religious belief.

64.   The Court should also permanently enjoin the defendants from investigating or disciplining a judge who refuses to officiate at same-sex marriages for reasons rooted in sincere religious belief.

### Claim No. 5: The Courts Should Overrule *Obergefell* And Declare That Same-Sex Marriage Is Not A Constitutional Right

65. The Commission's bullying of Judge Hensley and its threatening behavior toward other Christian judges is the direct result of the Supreme Court's pronouncement in *Obergefell* that same-sex marriage is a constitutional right, and that anyone who opposes same-sex marriage is therefore an enemy of the Constitution. This has emboldened activists and politicians to embark on a campaign of intimidation against individuals and institutions who dare to express the belief that marriage is between one man and one woman—even when the expressions of this belief are supposed to be protected by the Speech Clause and the Free Exercise Clause. The cities of San Antonio and Buffalo have banned Chick-fil-A from operating in their airports because it gave money to Christian organizations that oppose same-sex marriage, including the Salvation Army and the Fellowship of Christian Athletes. A presidential candidate recently called for revoking the tax-exempt status of every church in the United States that opposes same-sex marriage. *See* Patrick Svitek, *Beto O'Rourke Says Religious Institutions Should Lose Tax-Exempt Status If They Oppose Gay Marriage*, Texas Tribune (Oct. 11, 2019), available at https://bit.ly/32ohaxe (last visited on June 1, 2020). And at oral argument in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), the Solicitor General of the United States acknowledged that religious institutions that refuse to recognize same-sex marriage may be jeopardizing their tax-exempt status. *See* Oral Argument Transcript, *Obergefell v. Hodges*, No. 14-556, at 36–38 (U.S. Apr. 28, 2015).

66. The Supreme Court has given credibility to these attacks on religious freedom by inventing a constitutional right to same-sex marriage, which is enabling and encouraging activists to paint Christian individuals and institutions that oppose same-sex marriage as un-American and morally equivalent to racists.

67.  Yet there is nothing in the language of the Constitution that even remotely suggests that same-sex marriage is a constitutional right, and the *Obergefell* opinion failed to identify any provision of constitutional text that establishes this supposed constitutional right to same-sex marriage.

68.  Instead, *Obergefell* announced that judges may recognize and enforce "fundamental rights" that cannot be found anywhere in the Constitution's text, so long as the judge applies "reasoned judgment" when deciding what those atextual "fundamental rights" should be. *See Obergefell*, 135 S. Ct. at 2598.

69.  An earlier decision of the Supreme Court had prohibited judges from recognizing "fundamental rights" that are unmentioned in constitutional text unless those rights were "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *see also Obergefell*, 135 S. Ct. at 2602 (acknowledging that "*Glucksberg* did insist that liberty under the Due Process Clause must be defined in a most circumscribed manner, with central reference to specific historical practices."). But *Obergefell* refused to follow that approach, declaring that "reasoned judgment" rather than history and tradition is the touchstone for identifying "fundamental rights." The right to same-sex marriage is obviously not "deeply rooted in this Nation's history and tradition," so *Obergefell* had to create a new standard—the "reasoned judgment" test—that would allow the Supreme Court to impose same-sex marriage on all 50 states.

70.  *Obergefell*'s claim that a court may recognize and impose "fundamental rights" that have no basis in constitutional text or historical practice—and that rest on nothing more than a judge's purported exercise of "reasoned judgment"—reflects a lawless and unconstitutional understanding of judicial power. It allows judges to create and impose new constitutional rights based solely on their personal beliefs, so long as they claim to be exercising "reasoned judgment" when doing so. *See, e.g.*, *Obergefell*, 135 S. Ct. at 2620–22 (Roberts, C.J., dissenting) ("[T]oday's decision

rests on nothing more than the majority's own conviction that same-sex couples should be allowed to marry").

71.   The Constitution makes no allowance for the Supreme Court to invent constitutional rights that have no grounding in constitutional text or historical practice, and *Obergefell* violates the Tenth Amendment and the Republican Form of Government Clause by subordinating state laws to the policy preferences of unelected judges. The members of the *Obergefell* majority may have believed very strongly that same-sex marriage should be allowed in all 50 states as a matter of policy, but that is not a basis on which a court may enjoin the enforcement of a duly enacted statute.

72.   The *Obergefell* decision also flouted the precedent of the Supreme Court. It disregarded *Glucksberg* by recognizing a "fundamental right" to same-sex marriage, despite the fact that a right to same-sex marriage is not "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 721 (1997). *Obergefell* also overruled *Baker v. Nelson*, 409 U.S. 810 (1972), which had held that the idea of a constitutional right to same-sex marriage was so frivolous as to not even present a federal question. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2605 (2015) ("*Baker v. Nelson* must be and now is overruled").

73.   The Supreme Court's membership has changed since *Obergefell*. Justice Kennedy, the author of *Obergefell*, has been replaced by Justice Kavanaugh. Justice Scalia, who dissented in *Obergefell*, has been replaced by Justice Gorsuch.

74.   So it is far from clear that five members of the current Supreme Court will endorse *Obergefell* or its "reasoned judgment" test for identifying "fundamental rights." And it is hard to believe how any member of the Supreme Court could credibly defend a decision to adhere to *Oberegefell* on *stare decisis* grounds when when *Obergefell* so flagrantly disregarded *stare decisis* by overruling *Baker v. Nelson* and refusing to follow *Glucksberg*'s test for identifying "fundamental rights."

75.  Judge Umphress therefore seeks a declaratory judgment that: (a) There is no constitutional right to same-sex marriage; (b) The federal judiciary has no authority to recognize or invent "fundamental" constitutional rights based on a "reasoned judgment" test; and (c) The Supreme Court's ruling and opinion in *Obergefell* violate the Tenth Amendment and the Republican Form of Government Clause by subordinating state law to the policy preferences of unelected judges.

76.  The Supreme Court has instructed the lower courts to follow its precedents until the justices themselves overrule the disputed decision. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."). Judge Umphress therefore wishes to preserve this claim for an eventual petition (or cross-petition) for certiorari in the Supreme Court.

## DEMAND FOR JUDGMENT

77.  Judge Umphress respectfully requests:

   a.    the declaratory relief described in paragraphs 37, 44, 54, 63, and 74;

   b.    the injunctive relief described in paragraphs 45, 55, and 64;

   c.    an award of costs and attorneys' fees; and

   d.    all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_

| | |
|---|---|
| DAVID SPILLER | JONATHAN F. MITCHELL |
| Texas Bar No. 18934950 | Texas Bar No. 24075463 |
| MASON SPILLER | Mitchell Law PLLC |
| Texas Bar No. 24095168 | 111 Congress Avenue, Suite 400 |
| REID SPILLER | Austin, Texas 78701 |
| Texas Bar No. 24111067 | (512) 686-3940 (phone) |
| Spiller & Spiller | (512) 686-3941 (fax) |
| P.O. Drawer 447 | jonathan@mitchell.law |
| Jacksboro, Texas 76458 | |
| (940) 567-6644 (phone) | H. DUSTIN FILLMORE III |
| (940) 567-3999 (fax) | Texas Bar No. 06996010 |
| david@spillerlaw.net | CHARLES W. FILLMORE |
| mason@spillerlaw.net | Texas Bar No. 00785861 |
| reid@spillerlaw.net | The Fillmore Law Firm, L.L.P. |
| | 1200 Summit Avenue, Suite 860 |
| | Fort Worth, Texas 76102 |
| | (817) 332-2351 (phone) |
| | (817) 870-1859 (fax) |
| | dusty@fillmorefirm.com |
| | chad@fillmorefirm.com |
| | |
| Dated: June 1, 2020 | *Counsel for Plaintiff* |

## CERTIFICATE OF SERVICE

I certify that on June 1, 2020, I served this document through CM/ECF upon:

JOHN J. MCKETTA III
Graves, Daugherty, Hearon & Moody
401 Congress Avenue, Suite 2200
Austin, Texas  78701
(512) 480-5616 (phone)
(512) 480-5816 (fax)
mmcketta@gdhm.com

ROLAND K. JOHNSON
Harris Finley & Bogle, P.C.
777 Main Street, Suite 1800
Fort Worth, Texas 76102
(817) 870-8765 (phone)
(817) 333-1199 (fax)
rolandjohnson@hfblaw.com

DAVID SCHLEICHER
Schleicher Law Firm, PLLC
1227 North Valley Mills Drive, Suite 208
Waco, Texas 76712
(254) 776-3939 (phone)
(254) 776-4001 (fax)
david@gov.law

*Counsel for Defendants*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*