IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BRIAN KEITH UMPHRESS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:20-cv-00253-P |
| DAVID C. HALL, in his official capacity as Chair of the State Commission on Judicial Conduct et al., | § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants David C. Hall, in his official capacity as Chair of the State Commission on Judicial Conduct; Ronald E. Bunch, in his official capacity as Vice-Chair of the State Commission on Judicial Conduct; David M. Patronella; Darrick L. McGill; Sujeeth B. Draksharam; Ruben G. Reyes; Valerie Ertz; Frederick C. Tate; Steve Fischer; Janis Holt; M. Patrick Maguire; and David Schenck, each in their official capacities as Members of the State Commission ("Defendants") Motion to Dismiss or Transfer Based on Improper Venue ("Motion"). *See* ECF No. 7. Having reviewed the Motion, Plaintiff Brian Keith Umphress's Response (ECF No. 10), and Defendants' Reply (ECF No. 11), the Court finds that the Motion should be and is hereby **DENIED**.

### BACKGROUND

On November 12, 2019, the Texas State Commission on Judicial Conduct ("Commission") issued a public warning to Judge Dianne Hensley, a Justice of the Peace

in McLennan County, Texas. Pl.'s First Amended Complaint ("FAC") at Ex. 1, ECF No. 9-1. The Commission concluded that Hensley needed to be publicly warned that her decision not to officiate same-sex weddings on the basis of her conscience and religion while still officiating traditional weddings cast doubt on "her capacity to act impartially to all persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(1) of the Texas Code of Judicial Conduct."[1]  *Id.*  Hensley subsequently filed a lawsuit ("Hensley Lawsuit") against the Commission and its commissioners in the 170th District Court of McClennan County, Texas. Mt. to Dismiss or Transfer, Declaration of Jacqueline Habersham ("Habersham Decl.") at ¶ 3, ECF No. 7-1. Hensley's lawsuit remains pending. *Id.* at ¶ 6.

Plaintiff Brian Keith Umphress is currently a county judge in Jack County, Texas. FAC at 2. He asserts that he engages in numerous extrajudicial activities—namely, being a member and supporter of a Bible-believing church that "adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture"—that expose Plaintiff to discipline under the Commission's interpretation of Canon 4A(1) as expressed in Hensley's case.  *Id.*  Moreover, Plaintiff alleges that although he does officiate traditional weddings, he refuses to officiate same-sex weddings on the basis of his Christian faith and his contention that same-sex marriage remains illegal under Texas law.  *Id.*

---

[1] Canon 4(A)(1) provides, "A judge shall conduct all of the judge's extrajudicial activities so that they do not . . . cast reasonable doubt on the judge's capacity to act impartially as a judge[.]" TEX. CODE JUD. CONDUCT, Canon 4(A)(1).

2

Plaintiff contends that because he is running for reelection in 2022 on the platform that *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) was wrongly decided, and because he intends to continue officiating traditional but not same-sex weddings, he is susceptible to discipline from the Commission. FAC at ¶ 26.

Plaintiff filed the instant lawsuit on March 18, 2020.[2] ECF No. 1. He seeks declaratory relief, injunctive relief, and attorney's fees. FAC at ¶ 77. Specifically, Plaintiff wants the Court to enter a declaratory judgment that: (1) *Obergefell* and the United States Constitution do not require state-licensed officiants to perform same-sex ceremonies; (2) the First Amendment protects Plaintiff's right to engage in extrajudicial activities that disapprove of same-sex marriage and homosexual conduct; (3) Canon 4A(1) of the Texas Code of Judicial Conduct, as currently interpreted by the Commission, is unconstitutionally vague; (4) the Free Exercise Clause of the First Amendment prohibits the Commission from investigating or disciplining a judge who refuses to officiate same-sex marriages on the basis of sincere religious belief; and (5) it is far from clear that the current Supreme Court would "endorse" *Obergefell*. *Id.* at ¶¶ 37, 44, 54, 63, 74, 77.

Defendants filed a 12(b)(3) Motion to Dismiss or Transfer this case to the Western District of Texas. MTD at 1, ECF No. 7. Plaintiff filed a Response (ECF No. 10), and Defendants filed a Reply (ECF No. 11). The Motion to Dismiss is now ripe for review.[3]

---

[2]Plaintiff's counsel is apparently also counsel in the Hensley Lawsuit. *See* Habersham Decl. in Support of Defendants' Mt. to Dismiss at ¶ 6, ECF No. 7-1

[3]The Court also notes that the parties have also filed a joint report pursuant to the Court's June 18, 2020 meet and confer order. *See* Joint Report, ECF No. 13. In the Joint Report, Defendants asserted, *inter alia*, that Plaintiff "is not, and has not been, the subject of any investigation or disciplinary proceeding . . . [and] that neither the Commission [on Judicial

## APPLICABLE LAW

"[I]t is little debated that a venue determination in a federal question case is properly a matter of federal law." *Kipperman v. McCone*, 422 F. Supp. 860, 877 (N.D. Cal. 1976) (citing *Murphree v. Miss. Pub. Corp.*, 149 F.2d 138, 140 (5th Cir. 1945)). The general federal venue statute, 28 U.S.C. § 1391, governs "all civil actions brought in the district courts of the United States" unless "otherwise provided by law." 28 U.S.C. § 1391(a). Section 1391 provides that an action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* § 1391(b).

A party moving to dismiss based on improper venue does so pursuant to Rule 12(b)(3). FED. R. CIV. P. 12(b)(3). In determining whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir.

---

Conduct] nor any Texas court has—to date—expressed the view that Canon 4A(1) [of the Texas Code of Judicial Conduct] would be violated by a judge's choice of church for worship, nor (without more), a judge's choice to decline to perform same-sex marriages, nor a judge's choice to campaign on a platform that opposes same-sex marriage and *Obergefell*." Joint Report at 2–3; *see also* Habersham Decl. at ¶ 7, ECF No. 7-1. Defendants state that Plaintiff's lawsuit thus faces certain "jurisdictional hurdles," which include a lack of standing, ripeness, and "[f]ederal abstention principles." *Id.* at 3. As of the date of this order, Defendants have not filed any motions related to these issues.


2007). However, the Court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by Defendants in support of their motion to dismiss, or by Plaintiff in response to the motion. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. *See* 28 U.S.C. § 1406(a).

Courts are divided on which party bears the burden of proof on a motion to dismiss for improper venue on a Rule 12(b)(3) motion, but district courts in the Fifth Circuit have often imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum. *See e.g.*, *Broadway Nat'l Bank v. Plano Encryption Techns., LLC*, 173 F. Supp. 3d 469, 473 & n.2 (W.D. Tex. 2016); *Graham v. Dyncorp Intern., Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013); *Asevedo v. NBC Universal Media, LLC*, 921 F. Supp. 2d 573, 589 (E.D. La 2013); *EnviroGLAS Products, Inc. v. EnviroGLAS Products, LLC*, 705 F. Supp. 2d 560, 566 (N.D. Tex. 2010) (Fish, J.); *ATEN Intern. Co. Ltd. v. Emine Techn. Co., Ltd.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009). The Court agrees with this line of cases placing the burden on the plaintiff "because '[t]o hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue.'" *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996) (quoting *Delta Airlines, Inc. v. W. Conference of Teamsters Pension Tr. Fund*, 722 F. Supp. 725, 727 (N.D. Ga. 1989)).

## ANALYSIS

A. **Section 1391(b)(1): The official-capacity Defendants' personal "residence" does not determine venue in an official capacity suit.**

Plaintiff first asserts that venue is proper in this district under Section 1391(b)(1) because several of the Defendants reside in the Northern District. Resp. at 2–7.[4] Attached to Plaintiff's Response is a stipulation in which several of the defendants confirm that they are personally domiciled in the Northern District of Texas. ECF No. 10-1. That is, Commissioners Ertz, Reyes, Schenck, and Tate affirm that they are "domiciled in the Northern District of Texas, which means that their personal (but not official) residences are located in the Northern District of Texas and they intend to continue living there." *Id.* The dispute is whether these Defendants as parties *in their official capacities* "reside" within the Northern District of Texas under 28 U.S.C. § 1391(b)(1).

Section 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). Section 1391(c) defines "residency" for all venue purposes, in part, as follows: "[A] natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled." *Id.* § 1391(c)(1). Plaintiff argues that Section 1391(c)(1)'s definition of residency supports that state government officers fall within the definition of "natural person" regardless of whether they are parties in their

---

[4]It is undisputed that Plaintiff sued each individual defendant solely in his or her official capacity, not personally. *See* FAC at 4–5.

individual or official capacities. Resp. at 3–4. Thus, Plaintiff contends that venue is proper here because several defendants personally reside in this district. Plaintiff relies primarily on a New Mexico District Court case, which held that for venue purposes federal public officials, who are all "natural persons," reside where they are personally domiciled. *See* Resp. at 3–6; *Navajo Health Foundation—Sage Memorial Hosp. Inc. v. Burwell*, 86 F. Supp. 3d 1211, 1227–44 (D.N.M. 2015).

Defendants assert that Plaintiff's interpretation of Section 1391(c)(1) is flawed because it presumes that the phrase "natural person" includes "persons sued in their official capacity." Reply at 3. Defendants explain that the key difference between a "natural person" and a state official sued solely in his official capacity is that a lawsuit involving an official-capacity defendant follows the office and not the natural person. *Id.* at 4; *see, e.g.*, *William v. Banks*, 956 F.3d 808, 811 n.5 (5th Cir. 2020) (observing that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). That is, if an official-capacity defendant ceases to hold office, the successor official is substituted as a party defendant, so a venue determination based on a current government official's personal residence is improper. *See Karcher v. May*, 484 U.S. 72, 77 (1987) (affirming that "the public officer's successor is automatically substituted as a party"); FED. R. CIV. P. 25(d) ("An action does not abate when a public officer *who is a party in an official capacity* dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.") (emphasis added).[5]

---

[5]Defendants also argue the term "natural person" is used in elsewhere in Part VI to Title 28 of the United States Code *to the exclusion of* governmental officials sued solely in their official

As an initial matter, the Court finds *Navajo Health Foundation* to be inapposite because it concerned federal officials sued in their individual capacity. 86 F. Supp. 3d at 1213. *Navajo Health Foundation* specifically addressed Section 1391(e), a provision that expressly applies to "[a]ctions where defendant is officer or employee of the United States[.]" 28 U.S.C. § 1391(e). Unlike *Navajo Health Foundation*, this case concerns state officials, not federal officials, and Plaintiff does not seek to establish venue under Section 1391(e). Thus, *Navajo Health Foundation's* analysis—focusing on the interplay between Section 1391(e) and the definition of "residency" in Section 1391(c)(1)—is factually distinguishable.

But even if the case were factually on point, the Court disagrees with the reasoning that Section 1391(c)(1)'s use of "natural person" encompasses a state official who has been sued solely in his official capacity. Congress is presumed to be familiar with common-law principles such that those principles are intended to persist absent specific statutory language to the contrary. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989) (affirming that Congress is presumed to be familiar with common-law principles and is presumed for those principles to obtain "absent specific provisions to the contrary"); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 103 (2011) (recognizing that "basic principles of statutory construction require us to assume that Congress meant to incorporate 'the cluster of ideas' attached to the common-law term it adopted" (quoting *Beck v. Prupis*,

---

capacity. Reply at 4; *see* 28 U.S.C. § 1365(a) (providing jurisdiction to certain courts to enforce Senate subpoenas issued "to any natural person" but denying jurisdiction for a subpoena issued to an official "acting within his or her official capacity"). The Court finds this argument unpersuasive.

529 U.S. 494, 501 (2000))). Here, Congress did not expressly disclaim the long-accepted understanding that for all intents and purposes a state official sued in his official capacity is not a natural person for purposes of a lawsuit. *See, e.g., Hafer v. Melo*, 502 U.S. 21, 25, 27 (1991) (holding the real party in interest in an official-capacity suit is the governmental entity and not the named official). Nor does the Court find clear language in the text of Section 1391(c)(1) implicitly demonstrating that this understanding was rejected. Indeed, the Court believes Plaintiff's interpretation of Section 1391(c)(1) requires the Court to read "natural person" as a "natural person, including one who is a government sued solely in his official capacity." The Court declines to judicially amend Section 1391(c) in such a way. *Cf. Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019) (Gorsuch, J.) (observing that "courts aren't free to rewrite clear statutes"); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) (Thomas, J.) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)); *United States v. Palmer*, 16 U.S. (3 Wheat.) 610, 630 (1818) (Marshall, C.J.) ("[W]hen the legislature manifests [its] clear understanding . . . with its words, courts are bound by it.").

The Court believes its interpretation is buttressed by a more complete reading of Section 1391(c) because while Section 1391(c)(1) addresses residency as it relates to "a natural person," Section 1391(c)(2) addresses residency as it relates to "an entity with the capacity to sue and be sued . . . ." 28 U.S.C. § 1391(c)(1), (2). In the Court's view, to interpret Section 1391(c)(1)'s reference to "natural person" as also including "an entity" would render Section 1391(c)(2) surplusage. When interpreting a statute, courts adhere to

9

the presumption against superfluous statutory language, so courts generally avoid interpreting statutes in such a way that would render statutory language superfluous. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'") quoting *Market Co. v. Hoffman,* 101 U.S. 112, 115 (1879)).

Although it is axiomatic that a person sued solely in their official capacity is a natural person, for all intents and purposes of litigation, the party is not the natural person currently holding the office, but the office itself: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. The Court does not believe Section 1391(c)(1) alters this understanding for making a venue determination. Rather, a full reading of Section 1391(c) demonstrates that officers sued solely in their official capacities (such as Defendants) are not contemplated by Section 1391(c)(1)'s reference to "natural person." *See Missouri Electric Cooperatives v. Missouri*, 229 F. Supp. 3d 888, 891 (E.D. Mo. 2017) ("The general rule is that if a suit is brought against a state official in his official capacity, the official's residence is where he performs his official duties.").

Therefore, the Court finds that for purposes of determining venue, regardless of where Defendants personally are domiciled, as parties solely in their official capacities, Defendants do not reside in this district.

**B.     Section 1391(b)(2):  A substantial part of the events or omissions occurred in this district.**

Section 1391(b)(2) also provides for venue in a district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  In 1990, Congress amended the venue statute, replacing the language "the judicial district . . . in which the claim arose" with "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  "Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." *Globe Glass & Mirror Co. v. Brown*, 888 F. Supp. 768, 770 (E.D. La. 1995) (quoting Wright & Miller, *Federal Practice and Procedure*: Civil 2d § 3806  (1994 supp.)).

Plaintiff contends that venue is proper in this district because he resides in the district, campaigns in the district, and because he has officiated twelve traditional weddings in this district.  Resp. at 8.  According to Plaintiff, "[e]ach of the 12 weddings that [he] performed in the Northern District of Texas is an 'event' that exposes him to discipline from the [Commission], and every future marriage ceremony that he intends to perform in Jack County is another 'event' that subjects him to [Commission] discipline." *Id.* at 9.  Plaintiff further lists the following "events" or "omissions" as occurring in this district:

> • The future opposite-sex weddings that [Plaintiff] will perform, all of which will occur in the Fort Worth Division of the Northern District of Texas, unless a family member or close personal friend requests that [Plaintiff] officiate at a wedding located outside Jack County.
>
> • The "omissions" caused by [Plaintiff's] unwillingness to officiate at same-sex marriage ceremonies, all of which will occur in Jack County, in the Fort Worth Division of the Northern District of Texas.

11

> • The "events" involving [Plaintiff's] church attendance and support Christian Missions Church, all of which are located are located in Jack County, in the Fort Worth Division of the Northern District of Texas.
>
> • The "events" involving [Plaintiff's] speech and campaign activities in 2022, when he intends to campaign for reelection as an opponent of same-sex marriage and the living-constitution mindset that produced *Obergefell*.

*Id.* at 11 (citing Umphress Aff. at ¶¶ 6–8, 12, 13).

Defendants contend that Plaintiff's venue allegations improperly focus on Plaintiff's conduct and that there is "no allegation that any of these 12 Defendants (or the Commission) have visited [Plaintiff] in Jack County (or elsewhere in the Northern District), or traveled to or within the Northern District with respect to anything alleged in the Complaint, or engaged in any 'event or omission' . . . within this District." Mt. to Transfer Br. at 5; Habersham Decl. at ¶ 7 (testifying to no threatened or commenced disciplinary action against Plaintiff and affirming that all Commission activities occur in the Western District of Texas).

Plaintiff argues that Defendants incorrectly refuse to consider Plaintiff's conduct and suggests that it is proper under the post-1990 text of Section 1391(b)(2) for a court to consider a plaintiff's conduct when determining venue. *Id.* at 11–20. Plaintiff's argument covers a broad swath of cases and even goes to lengths to distinguish Wright and Miller's statement that seems to suggest the "correct view" is for courts not to consider where the defendants' alleged conduct impacted the plaintiff. *Id.* at 19–20. Defendants disagree with Plaintiff's cases and interpretation of Section 1391(b)(2) and spend the bulk of their reply brief explaining that all of Defendants conduct occurred outside of this district so venue

cannot be proper here. Reply at 7–9. Defendants also make a policy argument that Plaintiff's interpretation of Section 1391(b)(2) would essentially permit any judge in Texas to sue Defendants in any division of any district in Texas, based solely on the judge's perceived impact of the Commission's conduct. *Id.* at 8.

The Court agrees with Plaintiff's reasoning and cases supporting an understanding that the post-1990 amendments to Section 1391(b) allow the Court to consider more than just Defendants' conduct with regard to the events and omissions at issue in this case. That is, the Court may also consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities. *See Mist-On Sys., Inc. v. Nouveau Body & Tan, L.L.C.*, No. 4:03-CV-843-Y, 2004 WL 7335080, at *6 (N.D. Tex. June 15, 2004) (Means, J.) (denying motion to transfer because the "injurious effects [of defendants' alleged conduct] occurred in Texas"); *Farmland Dairies v. McGuire*, 771 F. Supp. 80, 82 (S.D.N.Y. 1991) (denying state official defendant's motions to dismiss or transfer because plaintiffs' activities occurring in the district where the suit was filed constituted a substantial part of the events giving rise to plaintiffs' claims).

Having concluded that the Court is not limited to Defendants' conduct, the Court finds that Plaintiff has established that 12 traditional weddings he has officiated coupled with his refusal to officiate same-sex weddings and church membership and attendance are all events and omissions all occurred in this district. Thus, while some relevant events and omissions from Defendants undoubtedly occurred in the Western District, the Court concludes that a substantial part of the events and omissions giving rise to *this* action, as well as the injurious effects of Defendants' alleged conduct occurred in this district. *Mist-*

13

*On Sys., Inc.*, 2004 WL 7335080, at \*6; *Farmland Dairies*, 771 F. Supp. at 82. Therefore, the Court finds that venue is proper in this district under Section 1391(b)(2).

## CONCLUSION

In light of the foregoing, the Court concludes that Defendants' Motion to Transfer (ECF No. 7) should be and is hereby **DENIED**.

**SO ORDERED** on this **14th day** of **August, 2020**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE