UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Brian Keith Umphress**, | |
| Plaintiff, | |
| v. | Case No. 4:20-cv-00253-P |
| **David C. Hall**, et al., | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

DAVID SPILLER
Texas Bar No. 18934950
MASON SPILLER
Texas Bar No. 24095168
REID SPILLER
Texas Bar No. 24111067
Spiller & Spiller
P.O. Drawer 447
Jacksboro, Texas 76458
(940) 567-6644 (phone)
(940) 567-3999 (fax)
david@spillerlaw.net
mason@spillerlaw.net
reid@spillerlaw.net

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Table of contents ..................................................................................... i

Table of authorities ................................................................................. ii

I. Judge Umphress has Article III standing because he has alleged "an actual and well-founded fear" that his actions will expose him to investigation or disciplinary action ................................................. 1

II. Judge Umphress's claims are ripe ................................................... 8

    A. The issues are fit for judicial decision because the issues presented are pure questions of law ....................................................... 8

    B. The plaintiff will face significant hardship from the *in terrorem* effects of the Commission's disciplinary actions against Judge Hensley .......................................................................................... 13

III. Judge Umphress is not seeking an advisory opinion ................................... 16

IV. Judge Umphress's claims fall within the *Ex parte Young* exception to sovereign immunity ....................................................................... 17

V. The defendants' argument that 42 U.S.C. § 1983 and 42 U.S.C. § 1988 shield them from injunctive relief and attorneys' fees is premature ............................................................................................. 18

VI. The act of initiating an inquiry into a judge is not an act "taken in [a] judicial capacity" within the meaning of 42 U.S.C. § 1983 and 42 U.S.C. § 1988 .................................................................................... 19

Conclusion ................................................................................................ 23

Certificate of service ............................................................................... 24

## TABLE OF AUTHORITIES

### Cases

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967) ................................................................. 8

*Baggett v. Bullitt*,
    377 U.S. 360 (1964) ............................................................... 17

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) .......................................................... 22

*Brill v. Countrywide Home Loans, Inc.*,
    427 F.3d 446 (7th Cir. 2005) ................................................ 22

*Center for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) .................................................. 5

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
    987 F.2d 1138 (5th Cir. 1993) ........................................ 2, 17

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................. 2

*Department of Housing and Urban Development v. Rucker*,
    535 U.S. 125 (2002) ............................................................... 22

*Doe v. Bolton*,
    410 U.S. 179 (1973) ................................................... 1, 5, 7, 8

*Franciscan Alliance, Inc. v. Burwell*,
    227 F. Supp. 3d 660 (N.D. Tex. 2016) .......................... passim

*Guerrero-Lasprilla v. Barr*,
    140 S. Ct. 1062 (2020) .......................................................... 22

*Health Net, Inc. v. Wooley*,
    534 F.3d 487 (5th Cir. 2008) ................................................ 18

*Hedges v. Obama*,
    724 F.3d 170 (2d Cir. 2013) .................................................. 4

*Jenevein v. Willing*,
    605 F.3d 268 (5th Cir. 2010) ................................................ 19

*Nat'l Rifle Ass'n of Am. v. Magaw*,
    132 F.3d 272 (6th Cir. 1997) .................................................. 7

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
    833 F.2d 583 (5th Cir. 1987) .................................................. 9

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012) .................................................. 9

*Palmer v. Bone,*
  2019 WL 2882053 (E.D. Tex. 2019) ........................................................... 15

*Poe v. Ullman,*
  367 U.S. 497 (1961) ........................................................................ 4, 15

*Seila Law LLC v. Consumer Financial Protection Bureau,*
  140 S. Ct. 2183 (2020) ................................................................ 20, 21

*Snyder v. Phelps,*
  562 U.S. 443 (2011) ......................................................................... 12

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) .................................................................... 16

*Steffel v. Thompson,*
  415 U.S. 452 (1974) ........................................................................... 1

*Stenberg v. Carhart,*
  530 U.S. 914 (2000 ...................................................................... 6, 7

*Suhre v. Haywood County,*
  131 F.3d 1083 (4th Cir. 1997) ............................................................ 8

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ......................................................... 2, 8, 13, 14

*Telescope Media Group v. Lucero,*
  936 F.3d 740 (8th Cir. 2019) ......................................................... 6, 7

*Virginia v. American Booksellers Ass'n, Inc.,*
  484 U.S. 383 (1988) ...................................................................... 2, 8

*Wheaton College v. Sebelius,*
  703 F.3d 551 (D.C. Cir. 2012) ......................................................... 15

*Younger v. Harris,*
  401 U.S. 37 (1971) ............................................................................ 7

**Statutes**

42 U.S.C. § 1983 ........................................................................... 18, 19

42 U.S.C. § 1988 ........................................................................... 18, 19

Tex. Family Code § 6.204(b) ................................................................ 14

Tex. Gov't Code § 33.002(a-1) ............................................................ 20

Tex. Gov't Code § 33.022 .................................................................... 21

Tex. Gov't Code § 33.022(c)(2)(A) ...................................................... 21

Tex. Gov't Code § 33.022(g)–(*l*) ........................................................ 21

**Constitutional Provisions**

Tex. Const. art. I, § 32 ............................................................ 14

Tex. Const. art. V § 1 ............................................................. 20

Tex. Const. art. V § 1-a(2) ..................................................... 22

**Other Authorities**

St. Aurelius Augustine, 2 *City of God* (R.V.G. Tasker ed., John Healey
   trans., J. M. Dent & Sons 1962) (1945).......................................... 12

William Baude, *Adjudication Outside Article III*,
   133 Harv. L. Rev. 1511 (2020) ................................................. 21

William Baude and Ryan D. Doerfler, *The (Not So) Plain Meaning
   Rule*, 84 U. Chi. L. Rev. 539 (2017) .......................................... 22

Federal Courts Improvement Act of 1996, S. Rep. 104-366,
   1996 U.S.C.C.A.N. 4202, 1996 WL 520492 ................................ 22

Mohandas K. Gandhi, *An Autobiography: The Story of My Experiments
   With Truth* (Mahadev Desai trans., Beacon Press ed. 1993) (1957) ............... 12

John Harrison, *Ex Parte Young*,
   60 Stan. L. Rev. 989 (2008) .................................................. 21

The defendants raise several jurisdictional objections to Judge Umphress's claims, but none of their arguments warrant dismissal.

I.    **JUDGE UMPHRESS HAS ARTICLE III STANDING BECAUSE HE HAS ALLEGED "AN ACTUAL AND WELL-FOUNDED FEAR" THAT HIS ACTIONS WILL EXPOSE HIM TO INVESTIGATION OR DISCIPLINARY ACTION**

The Commission sanctioned Judge Dianne Hensley after finding that she "has performed opposite-sex weddings for couples, but has declined to perform same-sex wedding ceremonies." *See* First Amended Complaint Ex. 1 (ECF No. 9-1) at 1. The Commission also announced that Judge Hensley had violated Canon 4A(l) of the Texas Code of Judicial Conduct by "casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation." *See id.* at 2.

The Commission's actions against Judge Hensley threaten every judge in Texas who refuses to perform same-sex marriages while continuing to perform opposite-sex marriages—including Judge Umphress, who (like Judge Hensley) refuses to perform same-sex marriages while continuing to perform marriages for opposite-sex couples. The Declaratory Judgment Act and the rules of Article III have long permitted litigants to seek pre-enforcement declaratory relief in situations of this sort, and they do not require Judge Umphress to wait until the Commission initiates or threatens enforcement action against him specifically. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (allowing abortion providers to challenge a state abortion statute "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."); *Chevron U.S.A., Inc. v.*

*Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("'The purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty.'" (citation omitted)). Instead, Judge Umphress needs only to allege "an actual and well-founded fear" that the Commission might initiate proceedings over his refusal to perform same-sex marriages. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (allowing pre-enforcement suit to proceed when the plaintiffs "alleged an actual and well-founded fear that the law will be enforced against them."). The Commission's discipline of Judge Hensley is more than enough to strike "an actual and well-founded fear" into the heart of Judge Umphress and other judges throughout Texas who decline to participate in same-sex marriages while continuing to officiate at opposite-sex weddings.[1]

The defendants try to defeat standing by suggesting that Judge Hensley was disciplined for conduct that extended beyond the mere refusal to perform same-sex weddings while continuing to officiate at opposite-sex marriage ceremonies. *See* ECF No.

---

1. The defendants are mistaken to assert that allegations of future injury must be "certainly impending" to inflict Article III injury. *See* ECF No. 26 at 4 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)); *id.* at 8 (same). *Clapper* itself clarifies in a footnote that plaintiffs may also establish Article III injury by alleging a "substantial risk" that a future harm will occur. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur . . . ."); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a " 'substantial risk' that the harm will occur." In all events, Judge Umphress has alleged that the commissioners are inflicting immediate, present-day injury upon him by forcing him to risk disciplinary action if he persists in refusing to perform same-sex marriages. *See* Amended Complaint ¶ 30 ("Judge Umphress is suffering injury in fact because he must risk disciplinary action if he persists in his refusal to officiate at same-sex marriage ceremonies."). This "actual and well-founded fear" is a present-day injury rather than a future injury, and it should not be analyzed under the "certainly impending" rubric of *Clapper*.

26 at 2–3; *id*. at 3 (claiming that Judge Hensley was disciplined for "the totality of her conduct"). But the defendants never explain *what* Judge Hensley did—beyond her refusal to perform same-sex marriages while continuing to perform opposite-sex marriages—that caused the Commission to find her guilty of violating Canon 4A(1). Nor do the defendants explain *how* Judge Hensley's conduct differs from Judge Umphress's behavior, and they do not explain how those differences (whatever they might be) would prevent Judge Umphress from plausibly alleging an "actual and well-founded fear" of investigation or disciplinary action.

More importantly, the public warning that the Commission issued to Judge Hensley rested on only six findings of fact, and those findings and accompanying conclusion make clear that the Commission interprets Canon 4A(1) to prohibit a judge from refusing to perform same-sex weddings if that judge continues to perform opposite-sex weddings. The Commission's findings of fact were as follows:

1. At all times relevant hereto, the Honorable Dianne Hensley was Justice of the Peace for Precinct 1, Place 1, in Waco, McLennan County, Texas.

2. On June 24, 2017, the Waco Tribune newspaper published an article on their website entitled No Courthouse Weddings in Waco for Same-sex Couples, 2 Years After Supreme Court Ruling which reported that Justice of the Peace Dianne Hensley "would only do a wedding between a man and a woman."

3. From August 1, 2016, to the present, Judge Hensley has performed opposite-sex weddings for couples, but has declined to perform same-sex wedding ceremonies.

4. Beginning on about August I, 2016, Judge Hensley and her court staff began giving all same-sex couples wishing to be married by Judge Hensley a document which stated "I'm sorry, but Judge Hensley has a sincerely held religious belief as a Christian, and will not be able to perform any same sex weddings." The document contained a list of local persons who would officiate a same-sex wedding.

     5.   Judge Hensley told the Waco-Tribune, the public and the Commission that her conscience and religion prohibited her from officiating same-sex weddings.

     6.   At her appearance before the Commission, Judge Hensley testified that she would recuse herself from a case in which a party doubted her impartiality on the basis that she publicly refuses to perform same-sex weddings.

*See* First Amended Complaint Ex. 1 (ECF No. 9-1) at 1–2. Then the Commission concluded, "[b]ased upon the record before it and the factual findings recited above," that Judge Hensley should be publicly warned for violating Canon 4A(1). *See id.* at 2. Any person who reads this document would conclude that the Commission regards a refusal to perform same-sex marriages, while continuing to perform opposite-sex marriages, as a violation of Canon 4A(1), and that other judges who perform marriages only for opposite-sex couples will risk investigation and discipline if the Commission gets wind of it.

    Finally, the defendants refuse to disclaim an intention to investigate or discipline Judge Umphress for the activities that he describes in his complaint. The defendants claim only that they have *not* threatened Judge Umphress with discipline. *See* ECF No. 26 at 5. But they do not go so far as to say that they *won't* investigate or discipline Judge Umphress for engaging in speech or activities that express disapproval of homosexual conduct. *See Poe v. Ullman*, 367 U.S. 497, 507–08 (1961) (opinion of Frankfurter, J.) ("If the prosecutor expressly agrees not to prosecute, a suit against him for declaratory and injunctive relief is not such an adversary case as will be reviewed here."). Given the Commission's actions against Judge Hensley, and given the Commission's unwillingness to forswear future investigations of other judges who refuse to perform same-sex marriages, Judge Umphress has alleged "an actual and well-founded fear" that the Commission might initiate proceedings over his refusal to perform same-sex marriages, and that is all that he needs to establish standing to seek pre-enforcement relief. *See Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013) ("[A]

preenforcement challenge is justiciable . . . when a plaintiff has an 'actual and well-founded fear' of such enforcement."); *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 473–74 (7th Cir. 2012) ("The injury-in-fact standard is often satisfied in pre-enforcement challenges to limitations on speech.").

The defendants' next move is to insist that Judge Umphress must allege or show an "imminent or threatened disciplinary proceeding" directed at him personally. *See* ECF No. 26 at 7 ("Judge Umphress has no evidence of any imminent or threatened disciplinary proceeding against him."). But a litigant seeking pre-enforcement relief is not required to allege an imminent or threatened enforcement action directed *at him*. In *Doe v. Bolton*, 410 U.S. 179 (1973), for example, the Court allowed doctors to bring a pre-enforcement challenge to Georgia's abortion law, "despite the fact that the record does not disclose that any one of them has been prosecuted, *or threatened with prosecution*, for violation of the State's abortion statutes." *Id.* at 188 (emphasis added). The Court explained:

> In holding that the physicians, while theoretically possessed of standing, did not present a justiciable controversy, the District Court seems to have relied primarily on *Poe v. Ullman*, 367 U.S. 497 (1961). There, a sharply divided Court dismissed an appeal from a state court on the ground that it presented no real controversy justifying the adjudication of a constitutional issue. But the challenged Connecticut statute, deemed to prohibit the giving of medical advice on the use of contraceptives, had been enacted in 1879, and, apparently with a single exception, no one had ever been prosecuted under it. Georgia's statute, in contrast, is recent and not moribund. Furthermore, it is the successor to another Georgia abortion statute under which, we are told, physicians were prosecuted. The present case, therefore, is closer to *Epperson v. Arkansas*, 393 U.S. 97 (1968), where the Court recognized the right of a school teacher, though not yet charged criminally, to challenge her State's anti-evolution statute. *See also Griswold v. Connecticut*, 381 U.S., at 481, 85 S. Ct. 1678.

*Id.* at 188–89. It was enough for the doctors to show that the Georgia abortion statute was "recent and not moribund," and that it was the successor to another Georgia

abortion statute under which *some* physicians were prosecuted. They did not need to allege or prove an "imminent or threatened" prosecution directed at them specifically. They needed only to establish a credible threat that the statute would be enforced against physicians generally, and that it was not a defunct or antiquated statute that was no longer being enforced against anyone.

And in *Stenberg v. Carhart*, 530 U.S. 914 (2000), the Court permitted abortion providers to challenge Nebraska's partial-birth abortion statute on the ground that it would prohibit the dilation and evacuation (D&E) procedure—despite the fact that the Attorney General of Nebraska had specifically disclaimed an intent to enforce the statute against any doctor who performed D&E abortions. *See id.* at 938–46. The Court allowed the doctors to raise this pre-enforcement challenge because "some present prosecutors and future Attorneys General *may choose to pursue* physicians who use D & E procedures, the most commonly used method for performing previability second trimester abortions. All those who perform abortion procedures using that method must fear prosecution, conviction, and imprisonment." *Id.* at 945 (emphasis added). The Court found that this mere *possibility* of future prosecution—even though it had been specifically disclaimed by the current Attorney General—not only imposed an Article III injury on abortion providers, but also violated the Constitution by imposing an "undue burden" on women seeking abortions. *See id.* at 945–46.

Finally, the Eighth Circuit's ruling in *Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019), allowed a Christian videography business (Telescope Media) to bring a pre-enforcement First Amendment challenge to the Minnesota Human Rights Act—even though Telescope Media had not yet entered the wedding-video business, and even though it was not facing any enforcement action (or any impending or threatened enforcement) from the state authorities. *See id.* at 749–50. The Eighth Circuit held that Telescope Media had alleged a "credible threat of enforcement" sufficient to establish standing under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

159 (2014), because Minnesota had "publicly announced" that its statute would require wedding vendors to provide equal services for same-sex and opposite-sex weddings, and the state had already enforced the Act against one wedding vendor who refused to rent a venue for a same-sex wedding. *See id.* It was enough for Telescope Media to allege that it intended to violate the Minnesota Human Rights Act and that the state authorities have enforced the statute against a similar religious objector. The Court did not require Telescope Media to allege an threatened enforcement action directed at it specifically.

Judge Umphress has shown that the Commission recently disciplined a justice of the peace who refused to perform same-sex marriages while continuing to perform opposite-sex marriages. That is all Judge Umphress needs to establish an "actual and well-founded" fear of future investigation, and that is all that Judge Umphress needs to take this fear outside the realm of the "imaginary or speculative." *Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs"); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997) ("Parties not yet affected by the actual enforcement of the statute are allowed to challenge actions under the First Amendment in order to ensure that an overbroad statute does not act to 'chill' the exercise of free speech and expression, a constitutionally protected right." (citation and some internal quotation marks omitted)). *Doe*, *Stenberg*, and *Telescope Media* make clear that a litigant who brings a pre-enforcement challenge is not required to allege a threat of enforcement directed at him specifically. He needs only to allege that the defendants are enforcing the challenged statute or policy against others who are similarly situated, *see Doe*, 410 U.S. at 188–89; *Telescope Media*, 936 F.3d at 749–50, or that the challenged statute or policy *could* be enforced by future government officials against the conduct that he is engaged in, *see Stenberg*, 530 U.S. at 945–46.

Finally, the defendants argue that Judge Umphress lacks standing because he has not altered his behavior in response to the Commission's discipline of Judge Hensley. *See* ECF No. 26 at 5–7. But Judge Umphress's Article III injury is the "actual and well-founded *fear*" that the Commission might take action over his refusal to perform same-sex marriages, *see American Booksellers Ass'n*, 484 U.S. at 393, and he is seeking judicial relief to eliminate this fear. A litigant need not change his activities in response to a potential prosecution or enforcement action before suing to obtain preenforcement relief. *See, e.g.*, *Doe*, 410 U.S. at 188–89 (allowing abortion doctors to bring pre-enforcement challenge to abortion statute without requiring them to show that the law had caused them to stop performing abortions); *see also Suhre v. Haywood County*, 131 F.3d 1083, 1089 (4th Cir. 1997) ("[C]hanged behavior is not necessary for purposes of standing.").

## II.   JUDGE UMPHRESS'S CLAIMS ARE RIPE

In determining whether a claim is ripe, a Court must consider: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). Each of these factors is easily satisfied.

### A.   The Issues Are Fit For Judicial Decision Because The Issues Presented Are Pure Questions of Law

A claim is "fit for judicial decision" if it presents a pure question of law. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (finding the "fitness" factor to be "easily satisfied" because "petitioners' challenge to the Ohio false statement statute presents an issue that is 'purely legal, and will not be clarified by further factual development.'" (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985)); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967) (finding issues to be "appropriate for judicial resolution at this time" because "the issue tendered is a purely legal one"); *Opulent Life Church v. City of Holly Springs*,

697 F.3d 279, 287 (5th Cir. 2012) ("Opulent Life's facial challenges . . . are fit for judicial decision because they raise pure questions of law."); *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (*NOPSI*) ("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."); *Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 681 (N.D. Tex. 2016) ("Because the present case involves primarily questions of law, the Court finds that it would not be significantly aided by further factual development.").

Each of Judge Umphress's claims presents pure questions of law. Judge Umphress is seeking judicial declarations that:

1. Nothing in *Obergefell* or the U.S. Constitution requires judges to perform same-sex marriage ceremonies, even if the judge chooses to perform opposite-sex weddings;[2]

2. The First Amendment protects Judge Umphress's right to express his disagreement with same-sex marriage and *Obergefell* by officiating only at weddings between one man and one woman;[3]

3. The First Amendment protects Judge Umphress's right to join, support, and worship at a church that teaches that marriage can exist only between one man and one woman and that homosexual conduct is immoral and contrary to the Bible;[4]

4. The First Amendment protects Judge Umphress's right to announce his opposition to same-sex marriage and *Obergefell* when seeking reelection in 2022;[5]

5. Canon 4A(1), as currently interpreted by the Commission, is unconstitutionally vague;[6]

---

2. *See* First Amended Complaint (ECF No. 9) at ¶ 37.
3. *See* First Amended Complaint (ECF No. 9) at ¶ 44.
4. *See* First Amended Complaint (ECF No. 9) at ¶ 44.
5. *See* First Amended Complaint (ECF No. 9) at ¶ 44.
6. *See* First Amended Complaint (ECF No. 9) at ¶ 54.

6.  The Free Exercise Clause prohibits the Commissioners from investigating or disciplining a judge who refuses to officiate at same-sex marriages for reasons rooted in sincere religious belief;[7]

7.  There is no constitutional right to same-sex marriage and *Obergefell* should be overruled.[8]

Yet the defendants refuse to analyze the ripeness issue by considering each of these claims individually; instead, they insist that the *entire case* is unripe even though their complaints about ripeness pertain to only a subset of the aforementioned claims. *See* ECF No. 26 at 8–15. The defendants, for example, never present an argument for how claims 1, 5, and 7 are unripe. They argue that claim 1 seeks an unconstitutional advisory opinion,[9] but that is a different objection from whether the claim is ripe. And the defendants are mistaken to assert that Judge Umphress "does not make a facial attack" on Canon 4A(1). *See id.* at 8. Judge Umphress's vagueness claim *is* a facial attack, and it asks the Court to enjoin the Commissioners from enforcing Canon 4A(1) across the board—at least until they announce a "clarifying interpretation" that explains when conduct that evinces disapproval of a person's sexual behavior violates the canon's impartiality requirement. *See* First Amended Complaint (ECF No. 9) at ¶ 55.

When considering the first prong of the *Abbott Laboratories* test, it is apparent that each of Judge Umphress's claims presents "pure questions of law," and they are meet for decision now without any need for further factual development. Whether *Obergefell* (or anything in the Fourteenth Amendment) compels state-licensed wedding officiants to conduct same-sex marriages if they continue to officiate at opposite-sex weddings is a pure question of law, and there is no need to wait for additional facts to unfold before a court rules on that question.

---

7.  *See* First Amended Complaint (ECF No. 9) at ¶ 63.
8.  *See* First Amended Complaint (ECF No. 9) at ¶ 75.
9.  *See* ECF No. 26 at 13.

The extent to which the First Amendment protects Judge Umphress (and other judges) from discipline for refusing to perform same-sex weddings is likewise a pure question of law, and Judge Umphress is already engaged in the very conduct for which he is seeking constitutional protection. Judge Umphress has specifically alleged that he refuses to perform same-sex weddings, even as he continues to officiate at opposite-sex marriage ceremonies,[10] and he wants a judicial declaration of his right to do so under the First Amendment. The Court's analysis of this constitutional question will not benefit from waiting until the Commission threatens to discipline Judge Umphress. The same is true of the requested declarations surrounding Judge Umphress's right to attend a church that teaches that homosexual conduct is contrary to the Bible, and to announce his opposition to same-sex marriage and *Obergefell* when seeking re-election. These are pure questions of law; the Court needs only to decide whether the First Amendment protects the right of Judge Umphress to join and support the Christian Missions Church in Jacksboro, despite the church's stance on homosexuality, and whether the First Amendment protects the right of Judge Umphress to criticize same-sex marriage and *Obergefell* when campaigning for re-election.

Judge Umphress is *not* asking this Court to hold that "there could be no instance when the totality of circumstances around a refusal to conduct a same-sex marriage could ever be part of conduct casting doubt on capacity to act impartially,"[11] as the defendants assert. Nor is he asking for a judicial declaration that immunizes "disparaging words about specific homosexual litigants,"[12] or that immunizes anything "he

---

10.  *See* First Amended Complaint (ECF No. 9) at ¶ 28.

11.  *See* ECF No. 26 at 10.

12.  *See* ECF No. 26 at 10.

ever says or does in the future, [or] in his 2022 reelection campaign."[13] The defend-
ants are surely correct to observe that judges can still be disciplined for words or
actions that evince hatred, prejudice, or bias toward homosexual litigants, and if a
judge were to join the Westboro Baptist Church or utter the slogans associated with
that organization, the Commission would be on firm constitutional ground in enforc-
ing Canon 4A(1) despite the Supreme Court's holding that such speech is protected
by the First Amendment. *See Snyder v. Phelps*, 562 U.S. 443 (2011). But there is a
fundamental (and obvious) distinction between words and actions that merely evince
disapproval of homosexual *behavior*, and speech that evinces hatred, prejudice, or bias
toward the *individuals* who engage in those behaviors. *See* St. Aurelius Augustine, 2
*City of God* 32 (R.V.G. Tasker ed., John Healey trans., J. M. Dent & Sons 1962)
(1945) ("love the sinner, hate the sin."); Mohandas K. Gandhi, *An Autobiography:
The Story of My Experiments With Truth* 276 (Mahadev Desai trans., Beacon Press ed.
1993) (1957) ("Hate the sin and not the sinner."). Judge Umphress is seeking pro-
tection *only* for speech and conduct that falls in the former category, and he has made
that clear throughout his complaint. *See* First Amended Complaint (ECF No. 9) at
¶¶ 40–45. And the Commission's actions against Judge Hensley show that the Com-
mission currently regards the mere refusal to participate in a same-sex marriage cere-
mony, while continuing to officiate at opposite-sex weddings, as a manifestation of
bias and prejudice against homosexual litigants, even when the judge's beliefs are com-
municated in a polite and respectful way. *See* First Amended Complaint Ex. 1 (ECF
No. 9-1).

The remaining claims likewise present pure questions of law on which the relevant
facts are undisputed. Judge Umphress's vagueness challenge to the enforcement of

---

13. *See* ECF No. 26 at 10.

Canon 4A(1) is a facial challenge, and the Free Exercise claim and his request to over-rule *Obergefell* do not require any further factual development. The defendants deny that the request to overrule *Obergefell* presents an "Article III case or controversy," but *Obergefell* is the but-for cause of the Commission's threatened disciplinary actions against judges who refuse to perform same-sex marriage, and the Commission would have no basis for threatening discipline of these judges in the absence of *Obergefell* because these judges would simply be following the law of Texas. Judge Umphress is suffering injury in fact from these threatened disciplinary actions, as explained in Section I, *supra*, and those injuries will be redressed by a judicial declaration that same-sex marriage is not a constitutional right and that Judge Umphress therefore has no obligation to perform them.

> **B.** **The Plaintiff Will Face Significant Hardship From The *In Terrorem* Effects Of The Commission's Disciplinary Actions Against Judge Hensley**

The "substantial hardship" prong will be satisfied if denying judicial review will cause a plaintiff to *risk* enforcement action for engaging in activity that he believes to be lawful. *See Susan B. Anthony List*, 573 U.S. at 167–68 ("Denying prompt judicial review would impose a substantial hardship on petitioners, forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other."); *Franciscan Alliance*, 227 F. Supp. 3d at 681 ("Substantial hardship is typically satisfied when a party is forced to choose between refraining from allegedly lawful activity or engaging in the allegedly lawful activity and risking significant sanctions."). Judge Umphress is currently at risk of investigation and disciplinary action from the Commission, and the Commission has already sanctioned a justice of the peace who (like Judge Umphress) refuses to perform same-sex weddings while continuing to officiate at opposite-sex marriage ceremonies. *See* First Amended Complaint Ex. 1

(ECF No. 9-1). The defendants do not deny that Judge Umphress remains at *risk* of investigation or discipline; they merely observe that they have not yet initiated action against him. *See* ECF No. 26 at 11 ("Today, no pending or threatened investigation or disciplinary proceeding exists."). And the Commission has not renounced its decision to discipline Judge Hensley, nor has it announced any guidance or safe harbors for judges who oppose same-sex marriage on religious grounds—or who oppose *Obergefell* and wish to obey the laws of Texas, which continue to define marriage as the union of one man and one woman.[14] That is all that Judge Umphress needs to establish "substantial hardship." *See Susan B. Anthony List*, 573 U.S. at 167–68; *Franciscan Alliance*, 227 F. Supp. 3d at 681. The status quo provides no assurance at all to judges who oppose same-sex marriage or *Obergefell*, who can only guess about whether their speech or actions will land them in trouble with the Commission.

The defendants appear to believe that Judge Umphress cannot establish "substantial hardship" unless he has personally been threatened with enforcement action or forced to curtail his speech or religious exercise in response to the Commission's discipline of Judge Hensley. *See* ECF No. 26 at 11. That stance is incompatible with *Susan B. Anthony List*, which holds that the mere need to *choose* between altering one's behavior and *risking* an enforcement action is enough to show a "substantial hardship." *See Susan B. Anthony List*, 573 U.S. at 167–68 ("Denying prompt judicial review would impose a substantial hardship on petitioners, *forcing them to choose between* refraining from core political speech on the one hand, or engaging in that speech and

---

14. *See* Tex. Const. art. I, § 32 ("(a) Marriage in this state shall consist only of the union of one man and one woman. (b) This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage."); Tex. Family Code § 6.204(b) ("A marriage between persons of the same sex or a civil union is contrary to the public policy of this state and is void in this state.").

*risking* costly Commission proceedings and criminal prosecution on the other." (emphasis added)). It is also incompatible with *Franciscan Alliance*, which likewise holds that a plaintiff need not alter his conduct in response to an alleged enforcement threat. *See Franciscan Alliance*, 227 F. Supp. 3d at 681 ("Substantial hardship is typically satisfied when a party is forced to choose between refraining from allegedly lawful activity or engaging in the allegedly lawful activity and risking significant sanctions."). Here, as in *Franciscan Alliance*, Judge Umphress challenging the Commission's enforcement of an "impartiality" canon that fails to acknowledge any exemptions or accommodations for religious objectors such as Judge Hensley or Judge Umphress. The risk of enforcement action against religious objectors made the claims in *Franciscan Alliance* ripe, and the risk of enforcement action is equally present in this case.

The defendants rely on *Palmer v. Bone*, 2019 WL 2882053 (E.D. Tex. 2019), adopted, 2019 WL 2868923 (E.D. Tex. 2019), but that case is readily distinguishable because there was no allegation that the defendants had ever taken enforcement action against *anyone* who had behaved in a manner similar to the plaintiffs. And we agree with the plaintiffs that this case would not be ripe—and there would be no Article III standing—if the Commission had never disciplined Judge Hensley (or any other judge) who had refused to perform same-sex marriages on account of their religious beliefs. *See generally Poe v. Ullman*, 367 U.S. 497 (1961). But *Palmer* offers no support for the defendants' ripeness argument when they have already brought disciplinary proceedings against a similarly situated judge, and when they refuse to forswear future enforcement actions against judges who decline to perform same-sex marriages for sincere religious reasons.

It would be a different matter if the Commission had renounced its decision to discipline Judge Hensley and promised to never again enforce Canon 4A(1) against religious objectors to same-sex marriage. *See, e.g.*, *Wheaton College v. Sebelius*, 703 F.3d 551, 552–53 (D.C. Cir. 2012) (when the federal government promises to the

Court that it will never enforce a regulation in its current form against a litigant, and promises to announce a different rule, "we take that as a binding commitment," and "[w]e take the government at its word and will hold it to it," which makes a challenge to the agency rule "not fit for review at this time."). But this case is a far cry from the situation in *Wheaton College*. The Commission has made *no* commitment to this Court—either in its briefing or in its public announcements—that it will protect religious objectors from disciplinary proceedings. Instead, the Commission can say only that it has not yet initiated enforcement proceedings against Judge Umphress for the conduct described in his complaint. *See* ECF No. 26 at 11 ("Today, no pending or threatened investigation or disciplinary proceeding exists."). That falls far short of a binding commitment, and it leaves in place the *in terrorem* effects of the Hensley sanction, which puts every judge who refuses to perform same-sex marriages at risk of disciplinary proceedings unless that judge ceases the performance of weddings across the board. *See Franciscan Alliance*, 227 F. Supp. 3d at 678 (allowing religious objector to challenge agency rule that failed to provide "*assurance* that they will be exempt from the Rule's provisions that contradict their religious beliefs" (emphasis added)).

### III.  Judge Umphress Is Not Seeking An Advisory Opinion

Judge Umphress is not seeking an advisory opinion because he has established the elements of an Article III case or controversy: (1) an injury in fact; that is (2) fairly traceable to the challenged conduct of the defendants; and (3) likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016); *see also* Section I, *supra*. His injury arises from the "actual and well-founded fear" that he will be subject to investigation or discipline on account of his refusal to perform same-sex weddings. The injury is traceable to the defendants' enforcement of Canon 4A(1) against Judge Hensley and their refusal to establish safe harbors or

accomodations for religious objectors. And the injury will be redressed by the declaratory and injunction relief that Judge Umphress seeks. That Judge Umphress is seeking judicial protection for future conduct does not turn his claims into requests for an "advisory opinion." *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("'The purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty.'" (citation omitted)).

## IV.   Judge Umphress's Claims Fall Within The Ex Parte Young Exception To Sovereign Immunity

Judge Umphress's claims fall squarely within the *Ex parte Young* exception to sovereign immunity. The Commission is *currently* deterring Judge Umphress and others from exercising their First Amendment rights, and it is currently subjecting them to the risk of investigation and discipline for following the teachings of their faith. This is not only because of the Commission's past decision to discipline Judge Hensley, but also because of the Commission's *ongoing* refusal to repudiate that decision and its unwillingness to announce or establish safe harbors for religious objectors who can only guess at how the Commission will enforce Canon 4A(1) against them. By perpetuating and maintaining this chilling effect on First Amendment freedoms, and by refusing to clarify how the "impartiality" canon applies to judges who oppose same-sex marriage, the Commissioners are engaged in an ongoing violation of Judge Umphress's constitutional rights—and they are violating the constitutional rights of similarly situated judges throughout the State. *See, e.g.*, *Baggett v. Bullitt*, 377 U.S. 360, 378–79 (1964) (observing how the vagueness of a state statute can inhibit the exercise of First Amendment freedoms.").

V.   **THE DEFENDANTS' ARGUMENT THAT 42 U.S.C. § 1983 AND 42 U.S.C. § 1988 SHIELD THEM FROM INJUNCTIVE RELIEF AND ATTORNEYS' FEES IS PREMATURE**

Federal law limits the availability of injunctive relief and attorneys' fees in lawsuits brought against a "judicial officer for an act or omission taken in such officer's judicial capacity." 42 U.S.C. § 1983 provides:

> [I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. And 42 U.S.C. § 1988 provides:

> in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988. The defendants insist that they are "judicial officers" within the meaning of these statutes, and that Judge Umphress has sued them for acts or omissions taken in their "judicial capacity." *See* ECF No. 26 at 18–21. They therefore contend that they cannot be subject to injunctive relief or an award of attorneys' fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

None of this concerns the jurisdiction of this Court, and the defendants should not be advancing this argument in a motion to dismiss for lack of subject-matter jurisdiction. Even if the defendants are right to assert that sections 1983 and 1988 preclude this Court from awarding injunctive relief or attorneys' fees, the Court *still* has jurisdiction to consider Judge Umphress's claims and award declaratory relief if needed. Sections 1983 and 1988 limit only the types of *remedies* available to litigants who successfully sue judicial officers under 42 U.S.C. § 1983, and that goes to the merits rather than jurisdiction. *See, e.g.*, *Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 (5th Cir. 2008) ("'It must be remembered that the anti-injunction act limits federal remedies without ousting federal subject-matter jurisdiction.'" (quoting 18B Charles

Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4469 at 82 n. 19 (2d ed. 2002)). And these statutes provide no basis for dismissing any of Judge Umphress's claims on the merits, because the continued availability of declaratory relief means that "relief can be granted" within the meaning of Rule 12(b)(6).

We respectfully submit that the Court should postpone resolution of these matters until the remedial stage of this litigation. If Judge Umphress prevails on any of his claims, then the Court can determine at that time whether section 1983 allows Judge Umphress to obtain a remedy that includes injunctive relief. And the Court can determine whether section 1988 authorizes a fee award if and when Judge Umphress submits an application for attorneys' fees.

## VI. The Act Of Initiating An Inquiry Into A Judge Is Not An Act "Taken In [A] Judicial Capacity" Within The Meaning of 42 U.S.C. § 1983 And 42 U.S.C. § 1988

If the Court decides to rule on the these issues now, then the defendants must establish that: (1) Each of the 13 commissioners qualifies as a "judicial officer"; (2) The act of initiating an inquiry into a judge is an act "taken in a judicial capacity"; *and* (3) The act of disciplining a judge is an act "taken in a judicial capacity." The defendants cannot establish any of these three propositions.[15]

The first problem with the defendants' argument is that the Texas Constitution vests "the judicial power" of the State exclusively in the courts:

> The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, and Court of Appeals, in District

---

15. The Fifth Circuit has never resolved whether the members of the State Commission on Judicial Conduct qualify as "judicial officers" within the meaning of 42 U.S.C. §§ 1983 and 1988. And it has not resolved the extent to which their duties qualify as acts or omissions "taken in [a] judicial capacity." *See Jenevein v. Willing*, 605 F.3d 268, 272 & n.5 (5th Cir. 2010) (acknowledging but declining to resolve these questions).

>  Courts, in County Courts, in Commissioner's Courts, in Courts of Jus-
>  tices of the Peace, and in such other courts as may be provided by law.

Tex. Const. art. V § 1. And the statute governing the State Commission on Judicial Conduct specifically declares that "[t]he commission does not have the power or authority of a court in this state." Tex. Gov't Code § 33.002(a-1). These provisions together make clear that the Commission is *not* exercising "the judicial power" of the state of Texas when it investigates or disciplines judges, because the judicial power of the state is vested exclusively in the "courts" and section 33.002(a-1) declares that the Commission is not a "court." The defendants make no effort to explain how an entity that *lacks* "the judicial power" of the state can nonetheless act in a "judicial capacity."

Instead, the defendants quote the first sentence of section 33.002(a-1), which describes the Commission as "an agency of the judicial branch of state government." ECF No. 26 at 19 (quoting Tex. Gov't Code § 33.002(a-1)). But there are many "agencies" of the judicial branch that are not composed of "judicial officers" and do not act in a "judicial capacity," including the Office of Court Administration, the Office of Capital Writs, the State Law Library, and the State Prosecuting Attorney. *See* https://www.txcourts.gov/organizations/agencies (listing each of these entities as "independent agencies of the Texas Judicial Branch"). The mere observation that the Commission serves as an "agency" of the judicial branch does nothing to establish that its members qualify as "judicial officers" or act in a "judicial capacity."

Another problem with the defendants' argument is that the State Commission on Judicial Conduct wields both prosecutorial and adjudicatory powers, much like other agencies in the modern administrative state. *See Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2193 (2020) (describing both the "enforcement" and "adjudicatory" powers of the CFPB); *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018); William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511,

1577–81 (2020). The Commission initiates inquiries and investigations into judges suspected of misconduct,[16] it orders the judge under investigation to respond to inquiries,[17] and it holds hearings after a full investigation has been completed.[18] Even if one were to think that the Commission acts in a "judicial" capacity when conducting hearings and deciding whether to impose discipline, it is *not* acting in a "judicial" capacity when deciding whether to launch an inquiry or investigation into a judge that refuses to perform same-sex marriages. That is an executive rather than a judicial act, *see Seila Law*, 140 S. Ct. at 2200, and Judge Umphress has sued to enjoin the Commissioners from "*investigating or* disciplining" a judge for activities that he believes are protected by the First Amendment. *See* First Amended Complaint (ECF No. 9) at ¶¶ 45, 64 (emphasis added). He surely can seek an injunction against the Commissioners' use of their investigatory and case-initiation powers—in the same way that he could seek to enjoin any other state official that is threatening to initiate an agency proceeding against him. *See generally* John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 989 (2008)

Finally, it is hard to defend the idea that *all thirteen* Commissioners qualify as "judicial officers" when the state constitution specifically requires that seven of the Commissioners *not* be judges of any sort:

> The State Commission on Judicial Conduct consists of thirteen (13) members, to wit: (i) one (1) Justice of a Court of Appeals; (ii) one (1) District Judge; (iii) two (2) members of the State Bar, who have respectively practiced as such for over ten (10) consecutive years next preceding their selection; (iv) five (5) citizens, at least thirty (30) years of age, not licensed to practice law nor holding any salaried public office or employment; (v) one (1) Justice of the Peace; (vi) one (1) Judge of a Municipal Court; (vii) one (1) Judge of a County Court at Law; and (viii) one (1) Judge of a Constitutional County Court

---

16. *See* Tex. Gov't Code § 33.022.

17. *See* Tex. Gov't Code § 33.022(c)(2)(A).

18. *See* Tex. Gov't Code § 33.022(g)–(*l*).

Tex. Const. art. V § 1-a(2). Under this provision, the Commission must include two members of the State Bar and five non-lawyers, giving the Commission a mix of judges and non-judges alike. In addition, the Senate Report of the Federal Courts Improvement Act of 1996, Pub. L. 104-317, 110 Stat. 3847 (1996), equates the term "judicial officer" with "justices, judges, and magistrates"—which would exclude the laypersons and non-judicial lawyers serving on the Commission:

> [T]he amendments to sections 1983 and 1988) codifies the general prohibition against holding judicial officers (justices, judges and magistrates) liable for costs, including attorney's fees, for acts or omissions taken in their judicial capacity.

Federal Courts Improvement Act of 1996, S. Rep. 104-366, 1996 U.S.C.C.A.N. 4202, 1996 WL 520492. Although the Supreme Court has warned lower courts not to rely on legislative history when statutory language is unambiguous,[19] the term "judicial officer" is not self-defining, making resort to legislative history appropriate. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020); *Bostock v. Clayton County*, 140 S. Ct. 1731, 1749 (2020) ("Members of this Court have consulted legislative history when interpreting *ambiguous* statutory language." (emphasis in original)); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (Easterbrook, J.) ("When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. . . .").[20]

---

19. *See Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 132 (2002) ("[R]eference to legislative history is inappropriate when then text of the statute is unambiguous.").

20. *See also* William Baude and Ryan D. Doerfler, *The (Not So) Plain Meaning Rule*, 84 U. Chi. L. Rev. 539, 543 (2017) ("Despite legislative history's critics, the Supreme Court as a whole has not categorically foresworn the use of legislative history.").

## CONCLUSION

The defendants' motion to dismiss for lack of subject-matter jurisdiction should be denied.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

DAVID SPILLER
Texas Bar No. 18934950
MASON SPILLER
Texas Bar No. 24095168
REID SPILLER
Texas Bar No. 24111067
Spiller & Spiller
P.O. Drawer 447
Jacksboro, Texas 76458
(940) 567-6644 (phone)
(940) 567-3999 (fax)
david@spillerlaw.net
mason@spillerlaw.net
reid@spillerlaw.net

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: October 7, 2020

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on October 7, 2020, I served this document through CM/ECF upon:

John J. McKetta III
Graves, Daugherty, Hearon & Moody
401 Congress Avenue, Suite 2200
Austin, Texas  78701
(512) 480-5616 (phone)
(512) 480-5816 (fax)
mmcketta@gdhm.com

Roland K. Johnson
Harris Finley & Bogle, P.C.
777 Main Street, Suite 1800
Fort Worth, Texas 76102
(817) 870-8765 (phone)
(817) 333-1199 (fax)
rolandjohnson@hfblaw.com

David Schleicher
Schleicher Law Firm, PLLC
1227 North Valley Mills Drive, Suite 208
Waco, Texas 76712
(254) 776-3939 (phone)
(254) 776-4001 (fax)
david@gov.law

*Counsel for Defendants*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff*