IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRIAN KEITH UMPHRESS,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | | Civil Action No. 4:20-cv-00253-P |
| § | | |
| **DAVID C. HALL, in his official** § | | |
| **capacity as Chair of the State** § | | |
| **Commission on Judicial Conduct** § | | |
| **et al.,** § | | |
| § | | |
| **Defendants.** § | | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Beginning with Chief Justice Roberts's dissent[2] and Justice Thomas's dissent[3] to *Obergefell*, jurists have recognized that the fundamental rights of religious freedom and marriage (now including same-sex marriage) are on an inevitable collision course. *See Davis v. Ermold, et al.*, 592 U.S. ____ (2020) (Thomas, J., statement respecting the denial

---

[1]This Amended Memorandum Opinion and Order supersedes the Memorandum Opinion and Order issued on November 10, 2020. ECF No. 38.

[2]*Obergefell v. Hodges*, 576 U.S. 644, 711–12 (2015) (Roberts, C.J., dissenting) ("Hard questions arise when people of faith exercise religion in ways that may be seen to conflict with the new right to same-sex marriage—when, for example, a religious college provides married student housing only to opposite-sex married couples, or a religious adoption agency declines to place children with same-sex married couples. Indeed, the Solicitor General candidly acknowledged that the tax exemptions of some religious institutions would be in question if they opposed same-sex marriage.  There is little doubt that these and similar questions will soon be before this Court.").

[3]*Id.* at 733–34 (Thomas, J., dissenting) ("In our society, marriage is not simply a governmental institution; it is a religious institution as well. Today's decision might change the former, but it cannot change the latter.  It appears all but inevitable that the two will come into conflict, particularly as individuals and churches are confronted with demands to participate in and endorse civil marriages between same-sex couples.").

of certiorari) (recognizing that "[d]ue to *Obergefell*, those with sincerely held religious beliefs concerning marriage will find it increasingly difficult to participate in society without running afoul of *Obergefell* and its effect on other antidiscrimination laws"). The undersigned fully agrees that, at some point, a federal court will be called upon to resolve an actual controversy in which these rights are in direct conflict. This case is not that point.

*First*, Plaintiff Brian Keith Umphress, currently the County Judge of Jack County, Texas, simply has not alleged (and cannot allege) facts to demonstrate that he has standing to challenge Defendants David C. Hall, in his official capacity as Chair of the State Commission on Judicial Conduct; Ronald E. Bunch, in his official capacity as Vice-Chair of the State Commission on Judicial Conduct; David M. Patronella; Darrick L. McGill; Sujeeth B. Draksharam; Ruben G. Reyes; Valerie Ertz; Frederick C. Tate; Steve Fischer; Janis Holt; M. Patrick Maguire; and David Schenck, each in their official capacities as Members of the State Commission's ("Commission") application of Judicial Canon 4A(1) of the Texas Code of Judicial Conduct. Thus, the Constitution mandates that the Court dismiss this action as failing Article III's case or controversy requirement. *Second*, there is currently a Texas state-court case pending involving another Texas judge who was allegedly harmed by the Commission's application of Canon 4A(1) in the way that Judge Umphress complains of here. Because that case provides the most appropriate vehicle for the challenged state action to reach Texas's highest court, federalism compels the Court to abstain from considering the constitutionality of a state rule when the state's highest court has not yet had an opportunity review the matter.

Thus, as more fully explained below, the Court **GRANTS** the Commission's Motion to Dismiss for lack of jurisdiction.

## BACKGROUND

A few months before filing his complaint, Judge Umphress heard that the Commission had issued a "public warning" to Judge Diane Hensley, a Justice of the Peace in McClennan County, Texas, because she had a policy of recusing herself from officiating at same-sex marriage ceremonies on account of her Christian faith. First Amended Complaint ("FAC") at ¶ 22, ECF No. 9. The Commission found that this particular policy violated Canon 4A(1) of the Texas Code of Judicial Conduct, which holds that "[a] judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." *Id*. at ¶ 23. In their warning, the Commission stated that Judge Hensley "should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(l) of the Texas Code of Judicial Conduct." *Id*.

In response, Judge Hensley filed a class action lawsuit against the Commission asking for declaratory relief to the effect that justices of the peace do not violate Canon 4A(1) by (1) performing traditional weddings, but not same-sex weddings; (2) expressing public disapproval of homosexual activity; or (3) affiliating with a church that opposes same-sex marriages. Judge Hensley's lawsuit is currently pending in Travis County. *See Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court of Travis County, Texas, Petition ¶¶ 80–81.

Judge Umphress[4] asserts that he engages in numerous extrajudicial activities—namely, being a member and supporter of a church that "adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture"—that expose him to discipline under the Commission's interpretation of Canon 4A(1) as expressed in Hensley's case. FAC at 2. Moreover, he alleges that although he officiates traditional weddings, he refuses to officiate same-sex weddings on the basis of his Christian faith and his contention that same-sex marriage remains illegal under Texas law. *Id.* Judge Umphress contends that because he plans to run for reelection in 2022 on the platform that *Obergefell* was wrongly decided, and because he intends to continue officiating traditional but not same-sex weddings, he is susceptible to discipline from the Commission. *Id.* at ¶ 26. Thus, Judge Umphress seeks declaratory and equitable relief against the Commission's **possible future** enforcement of Judicial Canon 4A(1) of the Texas Code of Judicial Conduct, claiming that the Commission's actions against a different judge located in a different county chilled his First Amendment rights. *Id.* at ¶¶ 37, 44, 54, 63, 74, 77.

In a Joint Status Report filed by the parties in this case, the Commission asserted, *inter alia*, that Judge Umphress

---

[4]It is worth noting that Judge Umphress's position is that of a constitutional county judge under the Texas Constitution. TEX. CONST. art. 5, § 15. The responsibilities of a constitutional county judge vary from those of a typical statutory judge. Their role is largely administrative and involves presiding over county affairs, but they also have limited jurisdiction over criminal misdemeanors punishable only by fine, civil cases where the amount in controversy is $200 or less, and other small judicial matters as provided by Texas law. *Id*. at § 16, 18–19. In any event, even though their duties are largely executive, not judicial, Texas constitutional county judges fall under the Commission's jurisdiction. *Id*. at § 1-a.

> is not, and has not been, the subject of any investigation or disciplinary proceeding . . . [and] that neither the Commission [on Judicial Conduct] nor any Texas court has—to date—expressed the view that Canon 4A(1) would be violated by a judge's choice of church for worship, nor (without more), a judge's choice to decline to perform same-sex marriages, nor a judge's choice to campaign on a platform that opposes same-sex marriage and *Obergefell*.

Joint Status Report at 2–3; *see also* Habersham Declaration in Support of Defendants' Mt. to Dismiss or Transfer at ¶ 7, ECF No. 7-1. The parties later appeared for a hearing at which the Commission's counsel unequivocally confirmed that based on Judge Umphress's pleaded activities: (1) he faced no disciplinary action from the Commission; (2) the Commission does not plan to take any disciplinary action against him; (3), his choice to decline to perform same-sex marriages and to campaign on a platform that opposes same-sex marriage and *Obergefell* is not violative of the Commission's interpretation of Canon 4A(1); and (4) there is no allegation of facts that the Commission would take action against him. ECF No. 20. Importantly, Judge Umphress does not dispute the Commission's assertions. *See generally*, Joint Status Report; FAC; ECF No. 20.

Now before the Court are two motions filed by Commission. The first is a Motion to Abstain and the second is a Motion to Dismiss Based on Lack of Subject Matter Jurisdiction ("Motion to Dismiss"), Abstention, and Lack of Standing. ECF Nos. 23, 25. The motions were fully briefed and are now ripe for review.

## ANALYSIS

Here, there is simply no case or controversy between the parties and, indeed, no credible indication that there will be a future case or controversy between the parties presenting the Court with a dispute to adjudicate. Judge Umphress is not running for office

until 2022, he continues to engage in his allegedly chilled behavior, the Commission expressly stated that it has not and will not prosecute him for his allegedly chilled behavior, and there is a currently pending state court case involving another judge on precisely the same state-law issues at bar that would render a decision on the federal constitutional questions presented unnecessary. For the reasons explained below, the Court finds that Judge Umphress lacks standing and that his claims are unripe. Alternatively, even if the Court had jurisdiction over this action, it would abstain under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).[5]

---

[5]This holding is in no way meant to disparage the weighty Constitutional issues presented by the parties. However, when federal judges take it upon themselves to actively make decisions in cases involving no real case or controversy and issue advisory opinions on far-reaching and important matters, they run the risk of disregarding the judiciary's role in our Republic as envisioned by the Founders. Indeed, they shake the foundations of our system of government.

In 1821, 45 years after he wrote the Declaration of Independence, Thomas Jefferson predicted:

> It has long however been my opinion, and I have never shrunk from it's expression, . . . that the germ of dissolution of our federal government is in the constitution of the federal judiciary; . . . working like gravity by night and by day, gaining a little to-day & a little tomorrow, and advancing it's noiseless step like a thief, over the field of jurisdiction, until all shall be usurped from the states, & the government of all be consolidated into one. to this I am opposed; because whenever all government, domestic and foreign, in little as in great things, shall be drawn to Washington as the center of all power, it will render powerless the checks provided of one government on another, and will become as venal and oppressive as the government from which we separated.

Letter from Thomas Jefferson to Charles Hammond (August 18, 1821), *in* 15 THE WRITINGS OF THOMAS JEFFERSON 330–33 (Albert Ellery Bergh Ed.) (1905); *Cf.* GEN. DOUGLAS MACARTHUR, A SOLDIER SPEAKS: PUBLIC PAPERS AND SPEECHES OF GENERAL OF THE ARMY DOUGLAS MACARTHUR 38 (Maj. Vorin E. Whan, Jr., ed., 1st ed. 1965) ("Perhaps the greatest privilege of our country, which is indeed the genius of its foundation, is religious freedom. Religious freedom, however, can exist only so long as government survives.").

## A. Judge Umphress lacks standing because the alleged injury lacks imminence and there is no credible threat of prosecution.

Standing, at its "irreducible constitutional minimum," requires plaintiffs "to demonstrate [that]: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will likely . . . be redressed by a favorable decision." *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002) (cleaned up) (citing *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing . . . each element . . . in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (collecting cases).

Significantly, an allegedly forthcoming injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (Alito, J.) (emphasis in original) (cleaned up). "Although imminence is concededly a somewhat elastic concept, *it cannot be stretched beyond its purpose*, which is to ensure that the alleged injury is not too speculative for Article III purposes[.]" *Id*. (emphasis added). Further, standing requires more than a "speculative" fear of prosecution. *Younger v. Harris*, 401 U.S. 37, 42 (1971)) (denying standing where plaintiffs claimed that they "feel inhibited" by the challenged law but as to whom no prosecution was threatened). Rather, there must be "a credible threat of prosecution." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)

7

(citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). "When plaintiffs do not claim that they have ever been threatened with prosecution [or] that a prosecution is likely . . . they do not allege a dispute susceptible to resolution by a federal court." *Id*. at 298–99. Mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Simply put, "[t]o invoke a federal trial court's jurisdiction, a litigant 'must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *KVUE, Inc. v. Moore*, 709 F.2d 922, 927 (5th Cir. 1983), *aff'd sub nom*. *Texas v. KVUE-TV, Inc.*, 465 U.S. 1092 (1984) (quoting *Babbitt*, 442 U.S. at 298). "The case or controversy requirement . . . forecloses our consideration . . . of abstract, hypothetical, and conjectural questions, and, indeed, of all matters save those involving parties who have a real dispute about a matter in which their interests are genuinely adverse." *Id.* at 927.

Here, Judge Umphress's complaint mentions neither a currently nor imminently pending judicial disciplinary proceeding or investigation against him. Instead, his alleged injury is a "chilling effect" on his First Amendment rights stemming from the Commission's decision to issue a Public Warning to a different judge in a different county. FAC at ¶¶ 22–24, 31. Specifically, Judge Umphress fears that he will risk disciplinary action if he continues to refuse to officiate at same-sex marriage ceremonies or when he announces his opposition to same-sex marriage when he seeks reelection in 2022. *Id*. at ¶ 29.

However, the Commission asserts not only that there are no plans to investigate or discipline Judge Umphress but that they will neither investigate nor discipline him if he acts in the very way that he claims to be chilled against. Joint Report at 2–3; ECF No. 20; *see also* Habersham Declaration in Support of Defendants' Mt. to Dismiss or Transfer at ¶ 7, ECF No. 7-1. *See Christian Coal. of Alabama v. Cole*, 355 F.3d 1288, 1293 (11th Cir. 2004) (affirming district court's dismissal because "we would be overstepping our judicial authority if we were to rule on the constitutionality of the [Alabama Judicial Inquiry Commission'] supposed 'enforcement policy' that is evidenced only by a withdrawn Advisory Opinion that was an interpretation of Canons that are currently being reconsidered" and because there are "still unsettled questions of state law").

Judge Umphress also does not appear to be chilled in his current actions. He continues to (1) attend the same church that he attended before he knew of the public warning to Judge Hensley and (2) engage in the same practice that he engaged in before concerning the performance of traditional wedding ceremonies but not same-sex ceremonies. FAC at ¶¶ 27, 28. Thus, a mere bare assertion of subjectively "chilled" activity to take place over a year and a half in the future falls outside the realm of "imminent" injury and remains well within that of the "speculative." *See Clapper*, 568 U.S. at 409; *Laird*, 408 U.S. at 13–14; *Younger*, 401 U.S. at 42. This applies especially in cases where, not only is there no "credible threat of prosecution," but the prosecuting entity expressly and exhaustively states that it has no plans to act against Judge Umphress for

9

partaking in the allegedly chilled activity. *See Babbitt*, 442 U.S. at 298; Joint Status Report at 2–3; ECF No. 20.[6]

---

[6]This case, involving a state judge's speech regulated by a state judicial commission, differs greatly from that in cases like *Speech First Inc. v. Fenves*, involving speech by students on a public university's campus. No. 19-50529, 2020 WL 6305819 (5th Cir. Oct. 28, 2020), as revised (Nov. 9, 2020). *First*, *Speech First* involved the University of Texas's tepid assertion that it would not enforce its rules against the students, and the students, in a facial challenge to the University's "Hate and Bias Incidents Policy" ("Policy") pointed to hundreds of incidents where the University previously enforced its Policy. *See Speech First*, 2020 WL 6305819 at * 9; *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163, (2014) (requiring that the future threat of enforcement of the challenged policy be substantial in as-applied challenges). In contrast, Judge Umphress, in an as-applied challenge to Canon 4(A)(1), only points to a singular incident involving the Commission issuing a warning to a different judge in a different county after the Commission repeatedly and exhaustively asserted that it would not discipline him if he acts in precisely the manner he desires. *See supra*; *compare Susan B. Anthony List*, 573 U.S. at 164–65 (where plaintiffs had prior proceedings against them and were explicitly threatened with future prosecution) *with Speech First*, 2020 WL 6305819 at * 9 (noting that there must be some evidence that a rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge). Thus, there is not only no "substantial" evidence (or any evidence) that Judge Umphress will be disciplined, but in fact there is *evidence directly to the contrary* in the Commission's multitude of assertions that it will not discipline him. *Accord Susan B. Anthony List*, 573 U.S. at 164.

*Second*, the Texas Constitution expressly affords the Commission oversight over a judicial candidate's conduct, and Texas is very far from being the only state that permits such regulation. *See, e.g.*, *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) (evaluating the application of Minnesota's Canons of Judicial Conduct to a Minnesota judicial candidate's First Amendment claims); *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (evaluating the application of Arizona's Canons of Judicial Conduct to an Arizona judicial candidate's First Amendment claims); *Christian Coal. of Alabama*, 355 F.3d 1288 (evaluating the application of Alabama's Canons of Judicial Conduct to an Alabama judicial candidate's First Amendment claims). It has long been recognized that states have an interest in promoting and protecting the impartiality (as well as the appearance of impartiality) of members of their judiciary. *See generally Republican Party of Minnesota v. White*, 536 U.S. 765 (discussing judicial impartiality); *see also Bracy v. Gramley*, 520 U.S. 899, 905 (1997) (would violate due process if a judge was disposed to rule against defendants who did not bribe him in order to cover up the fact that he regularly ruled in favor of defendants who did bribe him); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822–25 (1986) (judge violated due process by sitting in a case in which it would be in his financial interest to find against one of the parties); *Ward v. Monroeville*, 409 U.S. 57, 58–62 (1972) (judge violated due process by sitting in a case in which it would be in his financial interest to find against one of the parties); *Johnson v. Mississippi*, 403 U.S. 212, 215–16 (1971) (per curiam) (judge violated due process by sitting in a case in which one of the parties was a previously successful litigant against him); *In re Murchison*, 349 U.S. 133, 137–39 (1955) (judge violated due process by sitting in the criminal trial of defendant whom he had indicted); *Tumey v. Ohio*, 273 U.S. 510, 523, 531–34

Thus, given that Judge Umphress's alleged injury is far from imminent and that the Commission has expressly disclaimed any intention of investigating or disciplining him for engaging in his desired activity, the Court finds that Judge Umphress's claims must be **DISMISSED** for lack of standing.

**B.     Judge Umphress's claims are unripe for judicial consideration.**

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . [until a] decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148–49 (1967)). Determining whether an issue is ripe for judicial review requires considering "[t]he fitness

---

(1927) (judge violated due process by sitting in a case in which it would be in his financial interest to find against one of the parties).

 In contrast to state courts, universities are important forums where free speech and debate takes place. *See e.g.*, *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 267–70 (2000) (discussing the important role universities play as forums); *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829–832 (1995) (same). As the Fifth Circuit notes,

> [i]n our current national condition, however, in which institutional leaders [like this University President in this case], in a spirit of panicked damage control, are delivering hasty and disproportionate punishment instead of considered reforms, courts must be especially vigilant against assaults on speech in the Constitution's care. Otherwise, the people may not be free to generate, debate, and discuss both general and specific ideas, hopes, and experiences, to transmit their resulting views and conclusions to their elected representatives, to influence the public policy enacted by elected representatives, and thereby to realize the political and human common good.

*Speech First*, 2020 WL 6305819 at * 15 (cleaned up). It seems apparent that some distinction must be made between the standard applied to a judicial candidate's electoral speech as legitimately regulated by a state's Judicial Canons of Conduct and that which is applied to speech taking place in the heart of modern American intellectual and political debate—university campuses.

of the issues for judicial decision and . . . the hardship to the parties of withholding court consideration." *Id*. at 809; *see Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81 (1985) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting 13A C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532 (1984));

As discussed above, Judge Umphress's alleged injury is speculative—he does not plan to run for reelection until 2022 and the Commission repeatedly disclaimed any plans to investigate or discipline him if he continues to act in the manner he deems chilled. *See supra* at 6–9. On these facts, any adjudication of Judge Umphress's claims against the Commission is premature and as such unsuited for judicial decision. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811–12 ("[W]e . . . believe that further factual development would significantly advance our ability to deal with the legal issues presented.") (cleaned up).

Stated again, Judge Umphress does not appear to be chilled in his current actions and the Commission repeatedly disclaimed any plans to investigate or discipline him if he chose to act in the manner he deems chilled. *See supra* at 9–10. These facts strongly support that the parties will not undergo any meaningful hardship if the Court withholds consideration. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 803 (finding claims unripe where "[the law in question] d[id] not affect [the plaintiff's] primary conduct.").

Finally, because the Commission repeatedly disclaimed any plans to investigate or discipline Judge Umphress, the future event that he fears (being subject to investigation or discipline) "may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81. Thus, because consideration of this matter is premature, because the

12

parties will not undergo any meaningful hardship if the Court withholds consideration, and because the future events Judge Umphress fears may very well never occur, the Court finds that Judge Umphress's claims are unripe. *See Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 850 (9th Cir. 2007) (holding challenge to judicial canon was not fit for review under ripeness doctrine because "[t]he fact that Alaska's high court has not yet had an opportunity to construe the canons at issue here . . . further militates in favor of declining jurisdiction" and explaining that "[d]eclining jurisdiction . . . gives the Alaska Supreme Court the first opportunity to construe the canons in the context of judicial campaign speech"); *see also Poe v. Ullman*, 367 U.S. 497, 508-09 (1961) (dispute was not ripe because there was no real threat of criminal prosecution of plaintiffs under a Connecticut statute regulating contraceptives); *Muskrat v. United States*, 219 U.S. 346, 362-63 (1911) (a lawsuit between Native Americans and the federal government was not justiciable merely because Congress had passed legislation authorizing suit to resolve constitutional question when their interests were not adverse); *cf.* 3 CORRESPONDENCE AND PUBLIC PAPERS OF JOHN JAY 486-89 (H. Johnston ed., 1891) (the first justices of the Supreme Court refused to issue an opinion in response to President Washington's request for legal advice regarding a potential, future dispute).

Accordingly, Judge Umphress's claims must be **DISMISSED.**[7]

---

[7] Were the Court to assume jurisdiction and relax the standing and ripeness requirements, it fears that it would over-step the boundaries and limitations placed upon it by both the Constitution and long-standing precedent. *See United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (person injured by police "chokehold" could seek damages but had no standing to seek injunctive

**C.   Even if Judge Umphress had standing and his claims were ripe, the Court would abstain under *Pullman*.**

Alternatively, assuming *arguendo* that Judge Umphress had standing and that his claims were ripe, the Court would be compelled to abstain under *Pullman* doctrine and basic concepts of federalism. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). In *Moore v. Hosemann*, the Fifth Circuit succinctly explained the dispute in *Pullman* as well as the Supreme Court's subsequent explication of the doctrine as follows:

> In *Pullman*, plaintiffs challenged, on both federal constitutional and state law grounds, the authority of the Texas Railroad Commission to issue a racially discriminatory order. The Supreme Court abstained from deciding the case, because it found that if Texas courts were to strike down the Commission's action on state law grounds, it would be unnecessary to decide the federal constitutional question.
>
> As the Court later explained, the moral of *Pullman* was that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question

---

relief against future use of "chokehold" because he could not show sufficient likelihood of imminent personal harm and irreparable injury).

In *United States v. Richardson*, Justice Powell warned of the dangers to the Republic's structures when federal courts relaxed standing requirements:

> Relaxation of standing requirements is directly related to the expansion of judicial power. It seems to me inescapable that allowing unrestricted . . . standing would significantly alter the allocation of power at the national level, with a shift away from a democratic form of government. I also believe that repeated and essentially head-on confrontations between the life tenured branch and the representative branches of government will not, in the long run, be beneficial to either. The public confidence essential to the former and the vitality critical to the latter may well erode if we do not exercise self-restraint in the utilization of our power to negative the actions of the other branches.

418 U.S. at 188; *see also Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792) (declaring that it would be a violation of separation of powers principle for Supreme Court justices to *recommend* to the Secretary of War what amount of benefits should be paid to a veteran if the Secretary could refuse to follow Court's recommendation).

14

> can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 104 S. Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Pullman*, 312 U.S. at 500, 61 S. Ct. 643). "[F]or *Pullman* abstention to be appropriate . . . it must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Committee*, 283 F.3d 650, 653 (5th Cir. 2002). In other words, "[g]enerally, *Pullman* abstention is appropriate only when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *Baran v. Port of Beaumont Nav. Dist.*, 57 F.3d 436, 442 (5th Cir. 1995).

591 F.3d 741, 745 (5th Cir. 2009).

In a recent decision from the Fifth Circuit that stayed a district court's preliminary injunction issued in regard to Texas state voting rules, Judge Costa concurred in judgment only because he believed it was a "textbook case" for *Pullman* abstention. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 417 (5th Cir. 2020) (Costa, J., concurring in judgment). In his view, the case warranted abstention because it involved: (1) an unsettled question of state law and the answer to the question from the state court could have obviated the need for a federal constitutional ruling; (2) an already a pending state court proceeding that had reached the Texas Supreme Court; and (3) time for the federal court to rule, if necessary, after the state court decision. *Id.* at 418.

Here, Judge Umphress makes federal constitutional challenges to state action. FAC at ¶¶ 37–54. Judge Hensley's currently pending state court suit addresses the state law grounds on which Judge Umphress's claims would be decided. *Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court

15

of Travis County, Texas, Petition ¶¶ 80–81.  Should the Texas district court decide the issues in Judge Hensley's favor, it would render any federal constitutional decision by this Court unnecessary.

While hallmarks of *Pullman* abstention are undoubtedly present, the Court is mindful that the doctrine is not an "automatic rule to be applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964).  To that point, the Court believes that abstention in this case is not only available, it would be wholly appropriate.  Indeed, a recent Supreme Court opinion affirmed that notion, albeit in a different context, when it stated that courts are "essentially passive instruments of government[,]" they "do not, or should not, sally forth each day looking for wrongs to right." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987)).  In the context of *Pullman* abstention, federal courts do not sally forth each day hunting for theoretical constitutional issues to opine on when there is a real possibility that a pending state court proceeding will take the constitutionality of the state action off of the table.  *Cf. Poe*, 367 U.S. at 526 (Harlan, J., dissenting) ("[N]ormally this Court ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts.").

The one aspect of this case that the Court believes at first blush does not favor abstention is that Judge Hensley's lawsuit is still at the trial-court level.  Abstention is "more appropriate when there is a direct route to obtaining an answer from the state's

highest court rather than having to 'litigate[] through the entire state hierarchy of courts.'" *Tex. Democratic Party*, 961 F.3d at 418 (quoting 17A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4242 (3d ed. 2020)). While this means that Judge Hensley's case may not reach the Texas Supreme Court in an expedient manner, the Court believes that it is still prudent to abstain given that Judge Umphress is seeking reelection in 2022, and he candidly states that he "intends to campaign for office as an opponent of same-sex marriage and the living constitution mindset that produced *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)." FAC at 3. In the Court's view, this reinforces that the focus of this lawsuit is an unsettled area of Texas law that may become a central issue in a Texas state election. Indeed, one of the important interests that *Pullman* abstention seeks to promote is "harmonious relation[s] between state and federal authority[.]" 312 U.S. at 501. Therefore, even this one aspect of the case that may not favor abstention does upon closer inspection.

Thus, the Court would invoke *Pullman* abstention and abate the case even if Judge Umphress had standing and ripe claims. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *cf.* THE FEDERALIST No. 17 (Alexander Hamilton) (writing as "Publius") (explaining that under the Constitution, "the ordinary administration of criminal and civil justice" would be left to the states); Letter from Thomas Jefferson to James Madison (Mar. 15, 1789), in THE LIFE AND SELECTED WRITINGS OF THOMAS JEFFERSON 426 (Adrienne Koch & William Peden, eds.,

2004 Modern Library Paperback ed.) (1944) (The federal "judiciary . . . is a body, which, if rendered independent and kept strictly to their own department, merits great confidence for their learning and integrity.").

## CONCLUSION

For the foregoing reasons, the Court finds that the Commission's Motion to Dismiss (ECF No. 25), should be and is hereby **GRANTED**. Accordingly, Judge Umphress's claims against the Commission are **DISMISSED with prejudice**. Further, based on the Court's ruling on the Motion to Dismiss, the Commission's Motion to Abstain (ECF No. 23) is hereby **DENIED as moot**.

**SO ORDERED** on this **12th day** of **November, 2020.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE